[Civ. Nos. 21344, 21282.   Second Dist., Div. One.   May 23, 1956.]

MABEL WINKLER et al., Plaintiffs and Appellants, v. SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP (a Partnership) et al., Defendants and Appellants.

[Two Cases.]

Reid & Champlin and D. Wendell Reid for Plaintiffs and Appellants.

Chase, Rotchford, Downen & Drukker and Richard T. Drukker for Defendants and Appellants.

NOURSE (Paul), J. pro tem.*—The appellants, Southern California Permanente Medical Group, a partnership, and Sidney R. Garfield, appeal from a judgment of the lower court, based upon the verdict of a jury, awarding plaintiffs the sum of $20,000 for injuries alleged to have been suffered by the respondent Mabel Winkler through the alleged negligence of the defendants, their agents, and employees. They also appeal from the order denying their motions for judgments notwithstanding the verdicts. Plaintiffs appeal from that portion of the judgment upon the verdict which was against them and in favor of the defendants Scharles, Winkley, Portnoff, and Koff.

The action is one commonly known as an action for malpractice. Plaintiff Mrs. Winkler was on June 8, 1951, a member of the Retail Clerks Union, Local 770. As a member of that union, she was entitled to medical and surgical care and treatment by the appellant Garfield, a physician, who maintained a clinic under the name of the Permanente Health Plan. The appellant Garfield employed in the clinic a number of doctors including the defendants Veger, Hallatt, Ettinger, Koff, Scharles, Kay, Winkley, and Portnoff, and an accountant, the defendant Steil. Defendant Southern California Permanente Medical Group is a partnership which was formed on January 1, 1953, and composed of certain of the defendant doctors theretofore employed by Garfield. Garfield was not a member of that partnership.

On June 8, 1951, Mrs. Winkler became ill while at work and visited the clinic, where she consulted Dr. Veger. She was examined and treated in the clinic by Dr. Veger, Dr. Hallatt, Dr. Ettinger, and Dr. Kruse until August 10, 1951, at which time she was referred to defendant Dr. Koff, who made a tentative diagnosis of gallstones and referred her to another employee of appellant Garfield, a Dr. Shapiro, for X-rays. Dr. Shapiro took a series of X-ray pictures of Mrs. Winkler's gall bladder on August 14, and reported them negative. In taking these X-rays, Dr. Shapiro introduced a dye into plaintiff's body, but did not use a fatty-meal procedure. After receiving Dr. Shapiro's report, Dr. Koff advised the plaintiff that her X-rays were negative for gallstones. In the latter part of August, 1951, plaintiff returned to the clinic for further examination and was examined by Dr. Scharles, who prescribed certain medication.

*Assigned by Chairman of Judicial Council.

On August 31, 1951, plaintiff was examined by one Dr. Seal, who was not a member of the clinic. He made a tentative diagnosis of gallstones, and took X-rays. He used the fatty-meal procedure, and interpreted the X-rays which he took as showing the presence of one gallstone and the possible presence of two others. The plaintiff immediately entered the Valley Hospital, but was thereafter transferred to the Midway Hospital, where she remained from September 12 until September 18, 1951, during which period other X-rays were taken and a diagnosis of the presence of gallstones was made; and on the 18th defendant Dr. Winkley removed the gall bladder, which was found to contain a single gallstone. After postoperative care plaintiff was discharged from the Midway Hospital on September 25, 1951, having received care during her stay in the hospital from defendants Portnoff, Kruse, Kay, Scharles, and Winkley. In October she returned for a general checkup by Dr. Winkley.

She returned to work November 1, 1951, and in March, 1952, some of the symptoms she had had before her operations returned, and she was thereafter examined and treated by Doctors Koff, Winkley, and Portnoff until the middle of September, 1952, after which time she did not return for medical care from any of the defendants.

On October 1, 1952, she consulted a Dr. Peterson, who made a diagnosis of stricture of the common duct, and pancreatitis. He then operated upon her and found a stricture in the common duct, together with acute hepatitis. The stricture was in the sphincter of Oddi where the common duct points the duodenum. He dilated this sphincter, and thereafter bile flowed from the liver into the duodenum. Thereafter plaintiff suffered from hemorrhoids and a rectual fistula, and in November, 1953, she was treated for a kidney stone.

At the trial the plaintiffs produced qualified physicians who testified that Dr. Shapiro did not use accepted technique in X-raying the gall bladder, and that he did not use the degree of skill, care, and diligence ordinarily possessed by radiologists in this community, either in taking or interpreting the X-rays.

Dr. Peterson testified, in answer to a hypothetical question, that the defendant physicians who cared for plaintiff Mrs. Winkler after her gall bladder operation had not exercised the degree of skill and care which is possessed by doctors in the general practice of medicine in the community. All

of the evidence showed that the operation for the removal of plaintiff's gall bladder was skillfully performed. The testimony of plaintiffs' witnesses as to the negligence of Dr. Shapiro in the taking and reading of the X-rays, and of the other defendants in the postoperative care of the plaintiff, was disputed by evidence produced by the defendants.

On September 2, 1953, plaintiffs commenced this action. They joined as parties defendant the appellant Southern California Permanente Medical Group, a partnership (they did not allege of what persons the partnership was composed); the appellant Garfield; Kaiser Foundation Hospitals; Midway Hospital; Retail Clerks Union, Local 770; and Doctors Veger, Hallatt, Ettinger, Koff, Scharles, Kay, Winkley, and Portnoff; and Steil (sued as Styles). Their complaint was set forth in 10 counts.

By the first count they charged that the defendants undertook to operate upon the plaintiff for the removal of gallstones, and so carelessly and negligently performed the operation, and so carelessly and negligently administered postoperative care, as to cause the plaintiff severe pain, vomiting, and diarrhea, and a second operation, which was performed on October 11, 1952. They further charged that the defendant Garfield negligently failed to select and employ physicians and surgeons possessed of or capable of exercising that degree of care, skill, or learning possessed and exercised by physicians and surgeons practicing their profession in the community.

By their second count they sought to charge the defendant union only, alleging the same injuries and damages as named in the first cause of action. By their third count they sought to charge the defendant Veger only, alleging that on or about the 8th of June, 1951, plaintiff Mrs. Winkler presented herself to Dr. Veger for physical examination, which was made by said defendant, and that he conducted said examination negligently and carelessly, and wrongfully diagnosed plaintiff's illness. By the fourth count they sought to charge the defendant Hallatt only, making the same charges of negligence against him as were made in the third cause of action against Veger, and alleging the same injuries and damage. The fifth count is an exact duplicate of the third, except that the defendant Ettinger is named as the negligent physician. The sixth count is also a duplicate of the third, except that the defendant Koff is named as the negligent physician. The seventh count is also a duplicate of the third, except that

Scharles is named as the negligent physician. By the eighth count, plaintiffs sought to charge the defendant Kay only, alleging that he negligently performed the gall bladder operation on the 18th of September, 1951. The ninth count charges the defendant Portnoff with negligence in carelessly, negligently, and wrongfully diagnosing plaintiff's illness, and negligence in the interpretation of plaintiff's X-rays. By the tenth count of the complaint, plaintiffs sought to charge only Dr. Winkley, alleging that he was negligent in the performance of the operation for the removal of plaintiff's gall-bladder.

By paragraph XII of the first count of the complaint (which paragraph is incorporated by reference in each of the other counts) there are allegations from which we may assume that the plaintiffs were attempting to plead that the defendant physicians who were charged with negligence in operating upon and in caring for plaintiff Mrs. Winkler were the servants and agents of the defendant Garfield, and the case was apparently tried upon the theory that this paragraph did so allege.

At the outset of the trial, judgment on the pleadings was rendered in favor of the defendant Midway Hospital. This judgment is final.

Motions for a judgment of nonsuit made by the defendants Retail Clerks Union, Steil, Hallatt, Ettinger, Veger and Kay were granted, and the judgment entered in favor of these defendants is now final. The only defendants against whom plaintiffs' case was submitted to the jury are the appellants Southern California Permanente Medical Group, a partnership, and Dr. Garfield; and the defendants Kaiser Foundation Hospitals, Dr. Scharles, Dr. Winkley, Dr. Portnoff, and Dr. Koff.

At the conclusion of the trial and before argument, the court permitted the plaintiffs to amend their complaint to conform to proof, adding to their first cause of action a paragraph wherein they alleged that the defendants "so negligently and carelessly took and analyzed the gall bladder X-ray series at the Southern California Permanente Health Plan Group Hospital that they failed to discover the existence of gall bladder disease, and that said defendants, and each of them, did therefore fail to possess and exercise the proper degree of skill, care and diligence in the diagnosis . . . of plaintiff Mabel Winkler required to be possessed and exercised by qualified physicians and surgeons in this community. . . ."

They further alleged that plaintiffs did not discover and could not, by reasonable diligence and care have discovered, said negligence until the trial of the action, because prior to that time they had not been permitted to examine the X-rays taken.

To this amendment the defendants other than those as to whom the action had then been dismissed filed their answer placing the allegations of the amendment in issue, and alleging as a separate defense that the action was barred by subdivision 3 of section 340, Code of Civil Procedure.

As heretofore stated, the jury returned a verdict in favor of plaintiffs and against appellants and against the plaintiffs and in favor of all of the other defendants.

At the conclusion of the evidence, the appellants moved the court for directed verdicts, which were denied, and upon the return of the verdict, and before the entry of judgment thereon, they moved the court that judgment be entered in their favor notwithstanding the verdict. These motions were denied by the court before the entry of judgment.

APPEAL OF SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, A PARTNERSHIP

█ The entity sued as Southern California Permanente Medical Group, a partnership, was not formed and did not come into being as an entity until about January 1, 1953. The plaintiff did not receive treatment of any nature or kind from any of the defendants after September, 1952. There was no evidence that the partnership assumed liability for any of the acts of such of the defendants as had been employees of the defendant Garfield prior to January 1, 1953, and who became members of the partnership. The complaint does not charge that any of the individual defendants who treated Mrs. Winkler were at the time of such treatment in the employ of or the agents of the partnership, or members thereof. There was, therefore, no basis whatsoever for a verdict against it, and the trial court should have granted its motion for judgment notwithstanding the verdict. The judgment in favor of the plaintiffs and against this appellant must be reversed, and a judgment entered in its favor.

Hereinafter the defendant Garfield will be called the appellant.

Appellant maintains that inasmuch as the jury by its verdict impliedly found that none of the defendant physicians, who as employees of appellant treated Mrs. Winkler

after the removal of her gall bladder, were negligent, and that inasmuch as the negligence of Dr. Shapiro in taking and interpreting the X-rays of the plaintiff's gall bladder occurred more than one year before the discovery by plaintiff of the error in his diagnosis, the judgment against him cannot stand. ▉ In other words, it is appellant's contention that if plaintiffs seek to support the jury's verdict on any acts of a defendant physician other than Dr. Shapiro, they cannot do so, because the verdict would then be self-stultifying inasmuch as the jury impliedly found that none of these physicians was negligent; and that the verdict cannot be supported on the basis of Dr. Shapiro's negligence, because any cause of action based upon his negligence was barred by the statute of limitations long before the commencement of the action.

We have come to the conclusion that appellant's contentions must be sustained. It is apparent that the verdict cannot be sustained upon the basis of the negligence of Dr. Shapiro alone. Dr. Shapiro did not see or treat plaintiff Mrs. Winkler after rendering his diagnosis that her gall bladder did not contain gallstones. This diagnosis was rendered more than two years prior to the commencement of this action.

Respondents contend, however, that they did not discover the error in Dr. Shapiro's interpretation of the X-rays or his negligence in taking them until during the trial of the action, and that therefore the action is not barred by the statute.

There is no merit in this contention, for while the statute of limitations does not commence to run in an action of this kind until the plaintiff discovers his injury, or through the use of reasonable diligence should have discovered it (*Stafford* v. *Shultz*, 42 Cal.2d 767 [270 P.2d 1]; *Costa* v. *Regents of University of California*, 116 Cal.App.2d 445 [254 P.2d 85]; *Pellett* v. *Sonotone Corp.*, 55 Cal.App.2d 158 [130 P.2d 181]; *Agnew* v. *Larson*, 82 Cal.App.2d 176 [185 P.2d 851]; *Faith* v. *Erhart*, 52 Cal.App.2d 228 [126 P.2d 151]; *Petrucci* v. *Heidenreich*, 43 Cal.App.2d 561 [111 P.2d 421]), still the facts here show that the plaintiffs had full knowledge of Dr. Shapiro's negligence nearly two years before the commencement of this action. The evidence establishes without conflict that several weeks after Dr. Shapiro had taken his X-rays, Mrs. Winkler was X-rayed by another physician not connected with appellant's clinic; that these X-rays showed that her gall bladder did contain stones and on September 18 the

correctness of the second diagnosis and the error in Dr. Shapiro's diagnosis was absolutely established by the removal of the gall bladder and the examination of its contents. Therefore, assuming that some injury was caused to plaintiff by reason of the delay in the operation for the removal of her gall bladder because of Dr. Shapiro's negligence in the taking of the X-rays of her gall bladder and in interpreting them, any cause of action based upon that negligence is clearly barred by the statute of limitations.

Respondents further contend that appellant induced this error by requesting instructions which submitted to the jury the question of whether or not plaintiffs did discover Dr. Shapiro's error prior to the time of trial. This contention cannot be sustained.

Appellant requested the trial court to instruct the jury that it could not, in determining the liability, consider any claim that appellant was negligent because of the failure of Dr. Shapiro to correctly diagnose the X-rays, and to instruct the jury that Dr. Shapiro's negligence was not an issue in the case. Upon the refusal of this instruction, appellant did submit instructions which left to the jury the question as to whether the action was barred by the statute of limitations. Appellant did not lead the trial court into error. He merely acceded to the ruling of the trial court denying his request that the issue of Dr. Shapiro's negligence be taken from the jury. Therefore appellant is not estopped from here raising the error of the trial court, nor from here asserting that any cause of action that the plaintiffs might have because of the negligence of Dr. Shapiro is barred by the statute of limitations (*Williamson* v. *Pacific Greyhound Lines,* 93 Cal.App.2d 484, 487 [209 P.2d 146] ; *Dowd* v. *Atlas Taxicab etc. Co.,* 69 Cal.App. 9, 14 [230 P. 958]).

Inasmuch as the verdict cannot be sustained on the basis of Dr. Shapiro's negligence, it is evident that it is self-stultifying. The appellant did not see or treat the plaintiff and could only be held liable under the doctrine of *respondeat superior*; and at plaintiffs' request the trial court so instructed the jury.

The jury, however, impliedly found that none of appellant's employees was negligent. It thus destroyed any basis for a verdict against appellant. This proposition is firmly established (*Will* v. *Southern Pac. Co.,* 18 Cal.2d 468, 472 [116 P.2d 44] ; *Bradley* v. *Rosenthal,* 154 Cal. 420, 423 [97 P. 875, 129 Am.St.Rep. 171]).

Respondent argues, however, that inasmuch as the complaint charged appellant with negligence in employing unskilled and incompetent servants (the defendants in whose favor the jury returned verdicts), it must be assumed that the jury impliedly found that allegation to be true, and that therefore appellant can be held liable, irrespective of whether the individual employees were or were not negligent. The rule is that a judgment exonerating the agent does not exonerate the principal, if the principal is independently negligent and his negligence is a proximate cause of injury to another. But we need not examine the application of that rule to the facts here, for there is not an iota of evidence that the individual doctors were not properly trained, or were unskilled or incompetent, or that the appellant was negligent in employing them.

Respondents further argue that the acts of the employee-defendant were cumulative, and that while no single doctor could be found negligent in what he did, the acts of all of them taken together constituted negligence. We cannot see the logic of this reasoning, nor has respondent pointed to anything in the record to support it.

## PLAINTIFFS' APPEAL

Plaintiffs assert that if that portion of the judgment which is in favor of the plaintiffs and against the defendant Garfield is reversed, we should also reverse that portion of the judgment which is in favor of the defendants Scharles, Winkley, Portnoff, and Koff, and send the matter back for a new trial of the issues framed by the pleadings as to negligence on their part.

We think the plaintiffs' position is well taken, and that it would be unjust to reverse the judgment against the appellant Garfield and to let it stand in favor of the above-named doctors who were his employees.

Appellant Garfield does not contend that if a verdict had been returned against the individual doctors that verdict would not have been supported by the evidence. On the contrary, he states at page 25 of his reply brief that the evidence on the issues as to the negligence of each of these physicians was conflicting.

As we have heretofore said, the trial court erred in not instructing the jury that they could not find appellant liable because of any negligence on the part of Dr. Shapiro. However, the court did instruct the jury that if the plaintiff dis-

covered the fact of the existence of gallstones or could have, by reasonable diligence, discovered such fact before September 3, 1952, then they should disregard any charge of negligence predicated upon the taking or interpretation of the X-rays by Dr. Shapiro. In view of the evidence that Mrs. Winkler was operated upon, her gall bladder removed, and a stone found therein, on September 18, 1951, it is impossible to believe that the jury found that she did not not discover Dr. Shapiro's negligence at that time, and that they consequently based their verdict on the negligence of Dr. Shapiro. This conclusion is supported by the amount of the verdict, as the evidence failed to show that any substantial injury or damage was suffered by Mrs. Winkler because of the delay in performing an operation for the removal of her gall bladder; and this was the only result of Dr. Shapiro's negligence. It is not reasonable to suppose that a jury would award $20,000 for such a slight detriment.

It is not difficult to see why the jury was misled into returning the stultifying verdict which they rendered. The court did not instruct them that they could not return a verdict against appellant Garfield unless they returned a verdict against one or more of the physicians who treated Mrs. Winkler after September 18, 1951, but only instructed them that they could not return a verdict against appellant unless they found as a fact that one of these physicians was negligent. We cannot say on what basis the jury arrived at their verdict against appellant, but it seems more probable that they found that the defendant physicians were negligent in their examination and treatment of the plaintiff Mrs. Winkler after the operation than that they based their verdict upon the negligence of Dr. Shapiro; and it is understandable that having, in their deliberations, found these physicians negligent, they did not realize that in order to return a verdict against appellant it was necessary to return one against the negligent doctors. This being true, then in the interests of justice we must reverse not only the judgment against appellant Garfield but the judgment in favor of the defendants Scharles, Winkley, Portnoff, and Koff (*Bradley* v. *Rosenthal, supra,* pp. 426-427; *Tolley* v. *Engert,* 71 Cal.App. 439, 441 [235 P. 651]).

The judgment as against Southern California Permanente Medical Group, a partnership, and the order denying its motion that judgment be entered in its favor notwithstanding the verdict, are, and each of them is, reversed, with directions

to the trial court to enter a judgment in its favor and against the plaintiffs. The judgment as against the defendant Dr. Sidney R. Garfield is reversed, and the judgment in favor of the defendants Dr. Frederick H. Scharles, Dr. John H. Winkley, Dr. Clifton Portnoff, and Dr. Sheldon Koff is reversed, and the cause remanded for a new trial, and the trial court is directed to exclude from the issues to be tried any negligence of the defendant or any of its employees in the taking or interpretation of X-rays of the plaintiff Mrs. Winkler prior to September 18, 1951. The order denying the motion of appellant Sidney R. Garfield for the entry of judgment notwithstanding the verdict is affirmed. Each party to bear his or its own costs on appeal.

White, P. J., and Doran, J., concurred.