BRINSON ET AL. *v.* BETHESDA HOSPITAL, INC. ET AL.

(No. 84-CV-0694 — Decided July 9, 1985.)

Court of Common Pleas of Clermont County.

*W. Steven Boller,* for plaintiffs.
*Walter Haggerty,* for defendants.

RINGLAND, J. This matter came on to be heard on May 30, 1985 in regard to the motion for summary judgment made by defendant, Bethesda Hospital, Inc., and plaintiffs' motion *in limine.* The court took the matter under advisement in order to review the pleadings, memoranda, and the deposition of plaintiff Jennifer Brinson.

On September 24, 1984, plaintiffs, Jennifer L. and G. Bruce Brinson, filed their complaint against defendants, Bethesda Hospital, Inc. and Lewis K. Curtwright, D.O.; for the purpose of the summary judgment motion, Jennifer L. Brinson (hereinafter "plaintiff") and Bethesda Hospital (hereinafter "defendant hospital") are the parties whose relationship is at issue.

The facts indicate that on the morning of January 11, 1983, plaintiff fell at her workplace, injuring her left arm. A short time later, she went to Bethesda Hospital where her arm was X-rayed. Plaintiff was told by a member of the hospital's staff that the X-ray revealed that her arm was sprained or bruised. Her arm subsequently was placed in a sling and a hospital staff member advised her to take off work the next day. She was also advised to contact her family physician, Dr. Curtwright, for further treatment.

Later the same day, the defendant hospital discovered that plaintiff's X-ray revealed a fracture. The hospital then notified Dr. Curtwright of the error. However, neither of the two defendants notified the plaintiff. It was not until January 14, 1983, when she contacted Dr. Curtwright's office about a matter concerning her husband's illness, that plaintiff discovered her arm was fractured. That evening, Dr. Curtwright placed her arm in a cast.

The next time the plaintiff saw the doctor was on February 22, 1983 when she arranged an appointment about the damaged condition of her cast. Dr. Curtwright replaced the cast on that date and then one week later removed it. Between March 1, 1983, the date the cast was removed, and April 11, 1983, the plaintiff saw Dr. Curtwright several times about the lack of flexibility in her left arm and associated problems. During May, the doctor made arrangements for her to begin physical therapy with a specialist.

Plaintiff contends she first sus-

pected that her arm might be permanently damaged during her last office visit with Dr. Curtwright on April 11, 1983. Allegedly the doctor told her at that time that he was concerned about the continued immobility of her arm and that she would need physical therapy. The permanency of her injury was confirmed, she says, on September 19, 1984 when she consulted with Dr. James B. Willis, an orthopedic specialist.

On April 9, 1984, plaintiffs submitted their one-hundred-eighty-day notice letter to the two defendants and on September 24, 1984, this suit was initiated.

In its motion for summary judgment, the defendant hospital relies on R.C. 2305.11(A) and claims this statute's one-year limitation on actions for malpractice bars the injured plaintiff's suit against it. The affidavit of Richard Gautraud, M.D., accompanies the defendant hospital's motion. In that affidavit, Dr. Gautraud states that on January 11, 1983 he examined Mrs. Brinson, advised her that her elbow was sprained, referred her to her family physician, and that, so far as he knows, no other individual advised her that her elbow was sprained.

In *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, the Ohio Supreme Court replaced the "termination of the medical relationship" rule with the "discovery" rule as the time when a cause of action for medical malpractice accrues. As stated in the syllabus, the new rule is:

"Under R.C. 2305.11(A), a cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury. * * *"

Prior to *Oliver,* the Supreme Court weighed the advisability of adopting the discovery rule in *Wyler* v. *Tripi* (1971), 25 Ohio St. 2d 164 [54 O.O.2d 283], and

in a four-to-three decision, reluctantly decided against it. *Id.* at 170-171. In reversing its position, the *Oliver* court at 113 borrowed the following comment from *Wyler:*

" 'In situations such as the case at bar, where no injury or damage becomes apparent contemporaneously with the negligent act, the application of the general rule that a cause of action exists from the time the negligent act was committed would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence.' "

This quotation clearly indicates that it is not the date of the negligent act which is determinative. Rather, it is "when a patient actually discovers or in the exercise of reasonable care should have discovered an injury which is the result of malpractice." *Clark* v. *Hawkes Hospital* (1984), 9 Ohio St. 3d 182, 183.

The defendant hospital argues that if the January 11 date of its treatment of the plaintiff is not controlling, then the January 14 date, the time when she discovered that her X-ray had been misread, is the latest point at which plaintiff's cause of action accrued. Defendant relies on two California appellate cases, *Hemingway* v. *Waxler* (1954), 128 Cal. App. 2d 68, 274 P. 2d 699, and *Winkler* v. *So. Cal. Perm. Med. Group* (1956), 141 Cal. App. 2d 738, 297 P. 2d 728, to illustrate how plaintiff's knowledge of the misdiagnosis comes within the scope of the discovery rule.

In citing the first case, *Hemingway,* defendant hospital claims that its facts are strikingly similar to this case and in these circumstances, it stands for the legal principle that a plaintiff's cause of action commences once she is informed by other physicians her bone is broken. The *Hemingway* court held that such knowledge "imposed upon * * * [the plaintiff] the duty of ascertaining what the effects of this erroneous diagnosis,

and the treatment given by Dr. Waxler, were." *Hemingway, supra,* at 71.

Factually, the two cases are similar only insofar as both involve a broken bone, which was initially misdiagnosed and treated. However, the *Hemingway* facts extend much further. As part of his initial treatment, Hemingway was advised that since his injured leg involved bruised and pulled ligaments, he could put his weight on it in a day or two. *Id.* at 69. When he did so, Hemingway experienced extreme pain and immediately consulted his family doctor. *Id.* This consultation led to Hemmingway's admission to another hospital for new X-rays and the application of a cast. During his second hospital stay, plaintiff learned that there had been some subsequent and additional splintering. *Id.* at 70. It is this additional fact, namely plaintiff's awareness that he had suffered an injury as a result of the defendant's misdiagnosis and improper treatment, which differentiates *Hemingway* from this case. The court found that the limitations period commenced when the plaintiff knew his broken leg had been aggravated by subsequent and additional splintering, not when he returned to work and discovered he was going to have trouble with his leg the rest of his life. *Id.* at 71. In other words, the *Hemingway* holding correlates with *Clark's* definition of the discovery rule — the limitations time begins when a patient discovers an injury which is the result of the malpractice. *Clark, supra,* at 183.

The second California case, *Winkler,* also involves the X-ray-mistaken-diagnosis situation. To solve her limitations problem, the plaintiff in *Winkler* sought to divert attention from her discovery of the mistaken diagnosis and to focus instead on her inability to discover how the mistaken diagnosis arose. She claimed she had to wait until the trial to establish the manner in which the doctor was negligent, namely that he used an improper procedure when he X-rayed her for gallstones. *Winkler, supra,* at 745. The *Winkler* court was not so easily diverted and found the plaintiff's knowledge of the mistaken diagnosis from another source nearly two years before filing suit sufficed to show her discovery of the doctor's negligence. *Id.*

In its operation, the discovery rule coordinates two elements — the plaintiff's discovery of the injury and its negligent cause. *Larcher* v. *Wanless* (1976), 135 Cal. Rptr. 75, 557 P.2d 507. As the above paragraph demonstrates, *Winkler's* overriding concern was with only one of these elements, plaintiff's discovery of the negligent act. That case would be more pertinent to the case at hand if *Winkler* had done more than merely make a passing reference to the second element — the injury. Instead, the decision states it is "assuming that some injury was caused to plaintiff by reason of the delay in the operation-for the removal of her gallbladder because of Dr. Shapiro's negligence in the taking of the X-rays * * *." *Winkler, supra,* at 746.

In summary, the two California cases do not stand for the proposition that a patient's knowledge of the misdiagnosis, standing alone, is the time when the limitations period commences. Thus, the court cannot accept the defendant hospital's argument that January 14, 1983 is the latest point at which plaintiff's cause of action accrued.

In regard to any further analysis of whether plaintiff's action is time-barred, the significant date is April 9, 1983. Its significance is tied to the fact that one year thereafter plaintiff mailed her notice letters to the two defendants informing them that she was contemplating legal action. Under R.C. 2305.11(A), if written notice is given prior to the expiration of the one-year period, then a plaintiff may commence a claim against the notified individuals at any time

within one hundred eighty days after the notice is given. The words, "notice is given," mean the date on which plaintiff mails the notice. *Hughes* v. *Robinson Memorial Portage Cty. Hosp.* (1984), 16 Ohio App. 3d 80, paragraph four of the syllabus.

The only unresolved question, therefore, is whether the court should conclude, as a matter of law, that the plaintiff discovered or should have discovered her resulting injury in the eleven-week interval between January 14 and April 9, 1983. Two factors point to a negative answer. First, the injury plaintiff claims is that her arm is now permanently disabled. The permanency feature indicates that medical authorities would devote time to programs such as physical therapy before advising a patient that no further recovery was possible. Second, for more than seven weeks of this time frame, plaintiff's arm was in a cast while her broken elbow was mending. Common sense dictates that, unless the plaintiff was experiencing extreme pain or other unusual symptoms, this portion of her treatment would need to run its course before any permanent disability would be ascertainable. As for the remaining weeks, the issue of whether a reasonable person should have discovered such an injury or whether plaintiff did discover it, is one of fact, not of law.

As a final observation, it must be recognized that *Oliver's* discovery rule reflects a policy decision which, though more generous to plaintiffs, does not unduly undermine the short limitations period for malpractice actions. The rule's purpose, the *Oliver* court stated, "gives those injured adequate time to seek relief on the merits without prejudice to medical defendants." *Oliver, supra,* at 114. As one indication of this lack of prejudice, the court cited *Yoshizaki* v. *Hilo Hospital* (1967), 50 Hawaii 150, 154, 433 P. 2d 220, for the statement:

" '* * * We should not overlook the

fact that the plaintiff must produce evidence sufficient to establish a prima facie case before the defendant is obliged to produce any evidence * * *.' " *Id.* at fn. 3.

Before concluding this aspect of the decision, two arguments raised by the plaintiff require examination in order to clarify the court's position.

Plaintiff's first argument concerns the two-pronged nature of her complaint against the defendant hospital — malpractice under the one-year limitation period of R.C. 2305.11(A) and bodily injury under the two-year limitation period of R.C. 2305.10. Plaintiff contends that the defendant hospital's *respondeat superior* liability under the second prong embraces the negligence of all its employees, doctors as well as other personnel. She therefore asserts that R.C. 2305.11(A) does not present the exclusive time frame for holding the hospital responsible for the alleged negligent acts of the doctors it employs.

Plaintiff's argument is without merit. In *Richardson* v. *Doe* (1964), 176 Ohio St. 370, 371 [27 O.O.2d 345], the Supreme Court refers to malpractice as being a limited area of negligence. The limiting factor is the group of persons who can commit malpractice, namely "members of the medical profession and attorneys." *Id.* at 372. *Richardson* notes that these persons are peculiarly susceptible to unwarranted and fraudulent claims which the passage of time makes more difficult for them to disprove. *Id.* This rationale, the decision says, led the General Assembly in 1894 to include actions for malpractice in the one-year statute of limitations. *Id. Richardson's* ultimate holding is that a hospital's *respondeat superior* liability for the negligence of a nurse is subject to the two-year statute of limitations. *Id.* at 373. The reason underlying this conclusion is that the occupation of nursing does not fall within the common-law definition of those persons capable of

12

the professional misconduct known as malpractice. *Id.* at 372-373. Therefore, *Richardson* and, later, *Lombard* v. *Medical Center* (1982), 69 Ohio St. 2d 471 [23 O.O.3d 410], decisively establish that R.C. 2305.11(A) is the exclusive statute for a hospital's vicarious liability for the doctors it employs and R.C. 2305.10 is the appropriate statute for the hospital's other employees.

In her second argument, plaintiff relies on an agency theory in asserting that the defendant hospital is liable not only for the alleged negligence of its employees but for the alleged negligence of Dr. Curtwright as well. The relationship of agent to principal is a fiduciary one in which the agent consents to act on behalf and under the control of the principal and the principal engages him to do so. 1 Restatement of the Law 2d, Agency (1958), Section 1(1). Based on the information now before the court, the facts suggest that it was the plaintiff who engaged the services of Dr. Curtwright, not the defendant hospital. Nonetheless, plaintiff contends that the principal-agent relationship between the two defendants arose when the hospital entrusted its responsibility for correcting its misdiagnosis and improper treatment to Dr. Curtwright. Her argument presents a factual issue which must await testimony at the trial about the hospital's duty of care in these circumstances.

Turning now to the motion *in limine,* plaintiffs are requesting the motion for both the defendants' discovery pursuits and evidentiary matters at trial. In the discovery area, the court finds the requested motion to be inappropriate and therefore denies plaintiffs' request. In the evidentiary area, the motion is premature but counsel may present it at a later time.