Filed 8/18/15  Porter v. Mehraban CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| REGINA PORTER,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>MASOUD MEHRABAN et al.,<br><br>        Defendants and Respondents. | A143457<br><br>(Solano County<br>Super. Ct. No. FCS042844) |

This is an appeal after the trial court sustained defendants' demurrer without leave to amend.  Plaintiff in her complaint alleged defendants Dr. Mehraban and his employer, Kaiser Foundation Hospitals (Kaiser), engaged in medical malpractice in the treatment of her ankle injury.  The demurrer by defendants focused on the statute of limitations.  The trial court agreed.  We have reviewed the record and affirm the trial court here.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

In her first amended complaint (FAC), Regina Porter (Porter or plaintiff) alleges that on December 31, 2010, she fell backwards from a walkway in her apartment complex while making way for a neighbor to pass.  She believed she suffered an ankle sprain and did not seek immediate medical attention.  Over the next two days, the pain became worse and she went to the Kaiser emergency center on January 2, 2011.  She was examined by defendant Dr. Mehraban, who advised her she had an ankle sprain and "prescribed bed rest, ibuprofen, and a pair of crutches."

Plaintiff alleges the pain continued after her visit on January 2. It became "unbearable." Porter returned to Kaiser on January 18, 2011, where she was treated by a different person, Dr. Grundahl. Grundahl advised plaintiff she sustained a ruptured Achilles tendon when she fell on December 31, and that corrective surgery was needed immediately. Grundahl also reviewed the medical records of her January 2 visit with defendant Dr. Mehraban. On January 26, 2011, plaintiff had surgery on her Achilles tendon and then physical therapy under the direction of Dr. MacLachlan.

During August 2011, plaintiff sued the owner of the apartment complex where she fell and injured herself. A nonsuit was granted during the trial of that matter on February 7, 2013, after plaintiff completed her case.

On January 2, 2014, plaintiff filed her original complaint against Dr. Mehraban and Kaiser. On March 13, 2014, she filed her FAC. Plaintiff alleged Dr. Mehraban "failed to correctly diagnose the nature of the lower leg injury Plaintiff suffered on December 31, 2010, and/or to properly treat said injury." In the FAC, she alleges Kaiser was vicariously liable for the negligent conduct of Dr. Mehraban. Within her FAC, plaintiff explains her failure to file her suit closer to the time of the alleged malpractice, claiming she has "no medical background, education, or training, and had no means to discover [any] misconduct, negligence, or culpability of Defendants during the time that Plaintiff was their patient." She only discovered the negligence "[w]ithin one year last past."

In their demurrer, filed on May 6, 2014, defendants alleged the FAC was defective because the applicable statute of limitations had expired. (Code Civ. Proc., § 340.5.[1]) That statute provides medical malpractice claims are to be commenced "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."

[1] Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

Defendants alleged that once plaintiff was advised by Dr. Grundahl she had a specific and serious injury requiring immediate surgery that was substantially different from the diagnosis by Dr. Mehraban, she was on notice of potential malpractice. Hence the statute of limitations began to run on January 18, 2011. The lawsuit filed on January 2, 2014 was therefore not timely.

In her opposition, plaintiff repeated her contention she lacked sufficient medical knowledge to understand defendants had been negligent in caring for her. She contended Dr. Grundahl did not *expressly* advise her that Dr. Mehraban had misdiagnosed her injury. She believed the statute began to run when her trial against the landlord ended with the nonsuit.

Plaintiff submitted the declaration of her lawyer, who stated, "The factual and/or legal bases on which Plaintiff has relied, and/or brought suit against the Defendants . . . were discovered by Plaintiff Attorney for the first time during the latter half of January, 2013, shortly before the start of the Jury Trial commenced on February 5, 2013."

In their response to plaintiff's discovery contention, defendants argued compliance with the statute of limitations must be affirmatively alleged in the FAC filed by Porter. She therefore was obligated to allege adequate facts to support her delayed discovery claim, which she had failed to do. Additionally, defendants claimed Porter had no ongoing professional relationship with Dr. Mehraban after January 2, 2011, and even though she continued to be seen by Kaiser medical professionals, that did not toll the statute of limitations because she had notice of possible misdiagnosis as early as January 18, 2011.

The trial court noted the statute of limitations in a medical malpractice claim starts to run when the plaintiff has suspicions of wrongdoing or when a reasonable person would have such a suspicion. A diagnosis given to a plaintiff by one doctor that is later refuted by subsequent medical professionals can place the injured party on notice of possible negligence by the original treating physician. The trial court found plaintiff's

3

own narrative of her injury and the medical events in January 2011 should have triggered a belief of improper care by Dr. Mehraban. This was especially the case when two weeks later, with pain persisting, plaintiff was advised she had a ruptured Achilles tendon requiring immediate surgery.

The trial court sustained the demurrer without leave to amend as to each defendant. This appeal followed.

## DISCUSSION

A trial court's ruling sustaining a demurrer without leave to amend is reviewed de novo. (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1468.) We presume the truth of all properly pleaded facts contained in the FAC filed by plaintiff. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) We also presume the decision by the trial court is correct, and any error must affirmatively be demonstrated. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) However, the failure to allow amendment when a demurrer is sustained is reviewed based on an abuse of discretion standard. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) It is plaintiff's burden to present sufficient evidence to establish this abuse by the trial court. (*Ibid.*)

If alleged medical negligence takes place more than one year before the complaint is filed, a plaintiff is obligated to explain in the complaint when the late discovery was made, the circumstances under which it was made, facts to show the plaintiff is not at fault for not having made the discovery sooner, and that she had no actual or presumptive knowledge of facts sufficient to put her on inquiry notice. (*Mock v. Santa Monica Hospital* (1960) 187 Cal.App.2d 57, 64–65; *Hurlimann v. Bank of America* (1956) 141 Cal.App.2d 801, 803.) The detail of the pleading of late discovery in malpractice cases has been compared to the standard required for fraud allegations. (*Weinstock v. Eissler* (1964) 224 Cal.App.2d 212, 228.) In her FAC, plaintiff fails to address these discovery issues. Merely representing plaintiff's lack of medical background and education does not satisfy the standards listed above that avoid the bar of the statute of

4

limitations. Her claim that "[w]ithin one year last past, Plaintiff discovered, for the first time, that the Defendant was careless and negligent," does not have legal specificity to overcome the consequences of section 340.5.

By January 18, 2011, plaintiff had knowledge of several important things: (1) she fell on December 31, 2010, and she believed she had sustained an ankle injury; (2) by January 2, 2011, the pain was substantial enough she went to Kaiser and was treated by Dr. Mehraban, who confirmed the injury; (3) the pain continued and was "unbearable" by January 18, 2011, causing her to return to Kaiser and see Dr. Grundahl; (4) Dr. Grundahl told her she had ruptured her Achilles tendon when she fell December 31 and she needed immediate surgery to repair the tendon; and (5) plaintiff had suffered no other injury between the New Year's Eve fall and the visit with Dr. Grundahl. This timeline would cause a reasonable person to suspect defendants erred in their assessment of her condition on January 2.

It is interesting plaintiff opted to sue the property owners where she fell, and she filed the suit in 2011. Only after the nonsuit was granted in that litigation did plaintiff shift her focus and file her complaint against these defendants in 2014. However, her complaint in this regard was not limited to low-level or even moderate discomfort after seeing Dr. Mehraban. Instead, she alleged the pain intensified and went "from excruciating to unbearable." Her statement is graphic and supports a valid basis for suspicion regarding defendants' treatment performance. (*Winkler v. So. Cal. Etc. Medical Group* (1956) 141 Cal.App.2d 738, 745–746 [doctor's reading of patient's x-ray as negative for gallstones and another doctor's gallstone diagnosis three weeks later precluded under the statute of limitations a suit filed against the first doctor two years after the correct diagnosis].)

Plaintiff relies on her lack of medical knowledge to explain her delay in bringing this lawsuit. However, the statute of limitations commences when the *plaintiff has a suspicion of wrongdoing*. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111 (*Jolly*).)

5

She has to decide whether to proceed with her claim or sit on her rights. "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Ibid.*) We are therefore focusing on inquiry notice, nothing more. We assess this from the standpoint of a reasonable person. We believe a reasonable person presented with the timeline detailed above would be on inquiry notice to pursue a potential claim against these defendants. An urge to investigate a legal claim would have begun in January after Grundahl's diagnosis.

In *Dolan v. Borelli* (1993) 13 Cal.App.4th 816, the statute of limitations in section 340.5 was found to have barred a medical malpractice action brought by a patient against a doctor who performed surgery to eliminate pain caused by carpal tunnel syndrome. The doctor advised the patient she would be free of pain within 60 days after the surgery. When the pain persisted after 60 days, she obtained a second opinion because she suspected the original doctor acted improperly. During a second surgery, the nature of the original doctor's negligence was discovered. (*Id*. at p. 820.) The Court of Appeal rejected the patient's claim the statute of limitations began to run from the date of the second operation. (*Id*. at p. 823.) The court noted: "As discussed in *Jolly*[, *supra*, 44 Cal.3d 1103], the essential inquiry is when did [the patient] suspect [the first doctor] was negligent, not when did she learn precisely how he was negligent." (*Dolan v. Borelli*, at p. 824.)

In *Enfield v. Hunt* (1984) 162 Cal.App.3d 302, the defendant performed lumbar surgery on plaintiff. Within days after the surgery, while at physical therapy, the plaintiff heard the therapist state to another that the plaintiff could lose the leg without further intervention. The therapist believed the defendant had ordered the wrong type of brace. When the plaintiff was released from the hospital, the foot was worse than before the

6

surgery. The pain persisted for months. The appellate court found this *apparent* aggravation of a condition was a trigger for the patient to engage in further inquiry. (*Id.* at pp. 304–305.) "[I]t is the 'knowledge of facts[,] rather than discovery of legal theory, that is the test' [Citation.] 'Most people do not know the legal answers to questions arising from certain circumstances. However, facts and events which inform a person that something is wrong, or should be looked into, are usually recognizable by the ordinary person. One example is pain.' " (*Id.* at p. 310.)

Plaintiff also contended below that the one-year statute of limitations does not apply because she was under the care of other doctors at Kaiser during some of this period. However, she only saw Dr. Mehraban once, at the emergency room on January 2, 2011. The next doctor she saw while at Kaiser provided information that the sprain really was a ruptured Achilles tendon. Neither Grundahl nor MacLachlan suggested she refrain from seeking legal counsel with respect to Mehraban's conduct. Clearly, plaintiff had a professional relationship with defendant Dr. Mehraban on only one day. This hardly precluded discovery of his misconduct, and certainly does not avoid the impact of section 340.5 in this matter.

Finally, we do not believe that the trial court, after two complaints were insufficient, was obligated to allow further amendment. Plaintiff and her counsel did not detail any grounds why further amendment would permit her to satisfy the demands of section 340.5. In order to merit a further chance by amendment, plaintiff needed to be explicit in why amendment would cure her deficiencies. (*Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1081.) This she did not do.

## CONCLUSION

We affirm the judgment of the trial court.

7

_____
DONDERO, J.

We concur:


_____
HUMES, P.J.


_____
MARGULIES, J.