OLIVER, EXR., APPELLANT, v. KAISER COMMUNITY HEALTH FOUNDATION ET AL., APPELLEES.

[Cite as Oliver v. Kaiser Community Health Found. (1983), 5 Ohio St. 3d 111.]

(No. 82-833—Decided June 8, 1983.)

*Mr. Leonard Glazer, Weisman, Goldberg & Weisman Co., L.P.A., Mr. James Goldberg* and *Mr. Fred Weisman,* for appellant.

*Messrs. Weston, Hurd, Fallon, Paisley & Howley* and *Mr. Donald H. Switzer,* for appellees.

WILLIAM B. BROWN, J.  The narrow issue raised by this appeal is whether a cause of action for medical malpractice pursuant to R.C. 2305.11(A) accrues upon the termination of the medical relationship or upon the time of the discovery of the malpractice.

This case presents this court with the opportunity to reexamine, in light of contemporary standards of justice, the holdings of this court, of our appellate courts, and of the courts of last resort in other jurisdictions on this important issue. After considered examination and reflection, this court recedes from prior cases in order to establish the "discovery rule" in medical malpractice actions arising under R.C. 2305.11(A), a rule which this court is convinced will be productive of results more nearly consonant with the demands of justice and the dictates of ethics.

The statute of limitations applicable to medical malpractice, R.C. 2305.11, provides, in pertinent part, that:

"(A)  An action for * * * malpractice, including an action for malpractice against a physician * * * or a hospital * * * shall be brought within one year after the cause thereof accrued * * *."

In applying the statute, or analogous statutes, in the past, this court has held that "[a]s to a cause of action for malpractice by a physician, the statute of limitations begins to run at the latest upon the termination of the physician-patient relationship whether, within the time limited by the statute, the act constituting malpractice is known or unknown by the one upon whom it was committed." *DeLong* v. *Campbell* (1952), 157 Ohio St. 22 [47 O.O. 27].

The rationale underlying the adoption of the termination rule was set forth by this court in *Bowers* v. *Santee* (1919), 99 Ohio St. 361, 368, as follows:

"* * * The surgeon should have all reasonable time and opportunity to correct the evils which made the operation or treatment necessary, and even reasonable time and opportunity to correct the ordinary and usual mistakes incident to even skilled surgery. The doctrine announced here is conducive to

that mutual confidence that is highly essential in the relation between surgeon and patient."

For many years, the courts of Ohio demonstrated a commitment to the rule that the termination of the medical relationship is the event which commences the running of the one-year statute of limitations in medical malpractice actions now contained in R.C. 2305.11. See, *e.g., Gillette* v. *Tucker* (1902), 67 Ohio St. 106; *Bowers* v. *Santee, supra; DeLong* v. *Campbell, supra; Amstutz* v. *King* (1921), 103 Ohio St. 674; *Lundberg* v. *Bay View Hospital* (1963), 175 Ohio St. 133 [23 O.O.2d 416]; and *Wyler* v. *Tripi* (1971), 25 Ohio St. 2d 164 [54 O.O.2d 283].

In 1971, however, this court in *Wyler* v. *Tripi, supra,* expressed its grave concern over the inequities and harshness which result from the application of the termination rule in medical malpractice actions. After noting at page 166 that the "* * * construction of the statute of limitations pertaining to medical malpractice * * * [represents] a conflict between two basic policies of the law, viz., the policy of discouraging the fostering of stale claims, and the policy of allowing meritorious claimants an opportunity to present their claims,"[1] the majority in *Wyler* discussed the development and propriety of the termination rule, stating at page 168 as follows:

"In situations such as the case at bar, where no injury or damage becomes apparent contemporaneously with the negligent act, the application of the general rule that a cause of action exists from the time the negligent act was committed would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence. Although the termination rule is a marked departure from the general rule, and is designed to avoid the harsh results of that rule, it affords little relief in cases where the injury is one which requires a long developmental period before becoming dangerous and discoverable. In those situations, the termination rule extends the period of time at which the statute of limitations commences to run, but does so by a factor which bears no logical relationship to the injury incurred. See 30 Ohio St. L.J. 425, 430. The termination rule is further fallible in that it requires the patient to determine, at the time the relationship is terminated, that malpractice has taken place, when in fact he may have relied upon the very advice which constitutes malpractice. *Johnson* v. *Caldwell* (1963), 371 Mich. 368, 123 N.W. 2d 785; *Ayers* v. *Morgan* (1959), 397 Pa. 282, 154 A. 2d 788."

Troubled by this result,[2] the *Wyler* court examined the laws of various jurisdictions and the growing trend away from the termination rule and toward the discovery rule, and noted as follows at page 170:

---

[1] In so noting, the court cited *Billings* v. *Sisters of Mercy* (1964), 86 Idaho 485, 389 P. 2d 224.

[2] Various appellate courts throughout the state have expressed similar concerns over the harshness of the termination rule. See, *e.g., Saultz* v. *Funk* (1979), 64 Ohio App. 2d 29, 33 [18 O.O.3d 19]; *Federici (Oliver, Exr.)* v. *Kaiser Community Health Found.* (April 8, 1982), Cuyahoga App. No. 43961, unreported.

"Those jurisdictions which have adopted the discovery rule do not interpret its application as nullifying one of the purposes of the statute of limitations. (It is difficult to maintain that the claimant has been 'sleeping on his rights' when in fact he is unaware that he had such rights. See *Ayers* v. *Morgan* [1959], 397 Pa. 282, 154 A. 2d 788; *Morgan* v. *Grace Hospital* [1965], 149 W. Va. 783, 144 S.E. 2d 156.) Those courts view the discovery doctrine as being entirely consistent with the policy of the statute of limitations to prevent 'stale claims.' "

Although stating that "* * * an examination of the cases [from other jurisdictions] [footnote omitted] reveals that there is much to recommend the adoption of the discovery rule," the *Wyler* court, in a four to three decision, nonetheless "* * * reluctantly conclude[d] that the courts of Ohio should not decree such an adoption" because to do so would place the court "* * * in the obvious and untenable position of having not only legislated, but of having done so directly in the face of a clear and opposite legislative intent." *Id.* at 170-171.

This court concurs with the *Wyler* majority's assessment that the adoption of the discovery rule is well recommended. Use of the discovery rule eases the unconscionable result to innocent victims who by exercising even the highest degree of care could not have discovered the cited wrong. By focusing on discovery as the element which triggers the statute of limitations, the discovery rule gives those injured adequate time to seek relief on the merits without undue prejudice to medical defendants. Miraldi, Ohio's Statute of Limitations for Medical Malpractice (1977), 38 Ohio St. L.J. 125. This court feels, that in balancing the equities between doctor and patient, the burden placed on the doctor is much less than the greater injustice the patient would suffer.[3]

Contrary to the holding of the *Wyler* majority, however, it is the opinion of the present court that the *Wyler* majority put undue emphasis on legislative history as constituting legislative disapproval of the discovery rule and that judicial adoption of the discovery rule is proper.

The *Wyler* majority declined to adopt the discovery rule in large part due

---

[3] As the Supreme Court of Hawaii stated, in *Yoshizaki* v. *Hilo Hospital* (1967), 50 Hawaii 150, 154, 433 P. 2d 220:

"* * * We realize that added burdens are placed on defendants by forcing them to defend claims with evidence that may be stale. We should not overlook the fact that the plaintiff must produce evidence sufficient to establish a prima facie case before the defendant is obliged to produce any evidence. * * *"

See, also, *Wilkinson* v. *Harrington* (1968), 104 R.I. 224, 243 A. 2d 745, wherein the Supreme Court of Rhode Island at page 238 states:

"* * * It would appear from the modern trend towards the application of the discovery rule, that courts are beginning to conclude that only the negligent physician is protected by the strict interpretation of the statute of limitations in malpractice cases at the cruel expense of the public and of the competent physician. *Cf.* Note *The Statute Of Limitations In Actions For Undiscovered Malpractice,* 12 Wyo. L.J. 30 * * *."

to the failure of the General Assembly to enact a proposed discovery rule.[4] This court finds the following analysis employed by the Supreme Court of Oregon, in addressing a similar argument, most compelling:

"* * * The fallacy in this argument is that no one knows why the legislature did not pass the proposed measures. * * * Did the legislature fail to pass the measures because it was satisfied with the * * * [prior court] interpretations of the statute or because it was not in favor of * * * [the] overall limitation [placed in the proposed discovery rule], or because it disliked the length of the overall limitation? The practicalities of the legislative process furnish many reasons for the lack of success of a measure other than legislative dislike for the principle involved in the legislation. Legislative inaction is a weak reed upon which to lean in determining legislative intent." *Berry* v. *Branner* (1966), 245 Ore. 307, 311, 421 P. 2d 996, 998.[5] This court likewise declines to place so much significance upon legislative intent deduced from legislative history.

Similarly, the rejection of a proposed discovery rule by the General Assembly does not serve to interpose a bar to judicial adoption of such a rule, for as the Supreme Judicial Court of Massachusetts convincingly stated in *Franklin* v. *Albert* (Mass. 1980), 411 N.E. 2d 458, 462, "[t]he defendants urge us to construe these rejected bills as constituting such definite proof of legislative disapproval of a discovery rule as to be binding in this court. However, we do not read the failure to enact these bills as necessarily disapproving, in principle, a discovery rule. Further, we reject the suggestion that defeated legislative proposals have the power to disable us, in a proper case, from considering the questions presented by such proposals and from abandoning prior conclusions that now seem inappropriate."

The majority in *Wyler* also seemingly accorded great significance to the fact that while the General Assembly had created certain exceptions to the general operations of various other statutes of limitations, it had not done so in the malpractice area.[6] The *Wyler* court's conclusion that such action

---

[4] As the lower court so correctly assessed, the *Wyler* court specifically declined to adopt the discovery rule "* * * on the basis of the legislative action behind the medical malpractice law, namely that the General Assembly declined to pass a bill introduced to add the following language to the medical malpractice statute of limitations (R.C. 2305.11).

" 'If the action is for malpractice, the cause thereof shall not accrue until the malpractice is discovered.' "

[5] See, also, Hart & Sacks, The Legal Process: Basic Problems in the Making and Application of Law (Tent. Ed. 1958) 1395-1396, which lists a number of reasons legislators may have for opposing a particular bill, including, as may be true in the area under discussion here, the "[b]elief that the matter should be left to be handled by the normal processes of judicial development of decisional law, including the overruling of outstanding decisions to the extent that the sound growth of the law requires."

[6] The court in *Wyler* at pages 171-172 noted that "although the General Assembly has refused to adopt the discovery rule for medical malpractice cases, it has nevertheless created certain exceptions to the general operation of various other statutes of limitation." Hence it was held that:

evidenced an intent of the General Assembly to reject the discovery rule is misfounded. The Oregon Supreme Court in *Berry* v. *Branner, supra,* stated: "The validity of this reasoning is dependent upon the supposition that the legislature, in adopting the discovery principle as to * * * [one area of the law], had in mind undiscovered malpractice as well and nevertheless decided against the adoption of the discovery principle as to it. We do not now believe that this necessarily follows. Any number of things could have occurred which brought the inequities of the * * * [one] situation to the legislature's attention without it ever having considered analogous situations which might exist in other fields. * * * There are undoubtedly many other more or less similar situations. Did the legislature have them all in mind and reject them all?

"The fact that the legislature saw fit to clarify the time of accrual with regard to * * * [one area] does not necessarily mean that it was the original legislative intent that the discovery principle not apply in * * * [those] cases. Where the original statute was ambiguous, is it not just as reasonable to assume that the legislature pointed out the construction they had intended from the outset?" (Footnotes omitted.) *Id.* at 310-311.

Moreover, as this court recently held in *O'Stricker* v. *Jim Walter Corp.* (1983), 4 Ohio St. 3d 84, 87, "[a]bsent legislative definition, it is left to the judiciary to determine when a cause * * * [of action 'accrued']." And, as the dissent in *Wyler* so aptly noted, "* * * R.C. 2305.11 * * * says nothing about such termination."[7]

In this regard, the words of the Supreme Court of Oregon are again most poignant:

"The contention is made that a decision * * * [to adopt the discovery rule] amounts to judicial legislation. The legislature, however, did not provide that the time of accrual was when the physician performed the negligent act. This court did. The legislature left the matter undetermined. A determination that the time of accrual is the time of discovery is no more judicial legislation than a determination that it is the time of the commission of the act. * * *" *Berry* v. *Branner, supra,* at 313.

Indeed, as stated above, judicial adoption of the discovery rule in medical malpractice cases is a growing trend. In refusing to adopt the discovery rule in malpractice actions, this court noted in *Wyler, supra,* at 169-170, that eleven jurisdictions had adopted the full discovery rule. Twenty-eight states

---

"In consideration of the obvious and repeated disinclination of the General Assembly to amend its malpractice statute of limitations, we are compelled to adhere to our former decisions on the question and refrain from judicially adopting that which has so clearly been legislatively rejected." *Wyler* at 172.

[7] Justice J.J.P. Corrigan (25 Ohio St. 2d 173 [54 O.O.2d 288]), at 176.

and the District of Columbia have now adopted the full discovery rule in medical malpractice claims.[8]

It is most notable that this court has, in prior occasions, judicially adopted the discovery rule in medically related cases. For instance, in *Melnyk* v. *Cleveland Clinic* (1972), 32 Ohio St. 2d 198, this court adopted a discovery rule in the context of medical malpractice actions arising from claims of surgeons negligently leaving foreign objects in the body causing injuries.[9] And, the recent decision by this court in *O'Stricker, supra,* further compels the result reached herein. In *O'Stricker,* this court reasoned at page 90 that "* * * [a] latent disease [is] analogous to a hidden instrument left in the body of an unsuspecting patient," and held that an action relating to asbestos-related bodily injury claims accrues, under R.C. 2305.10, when the patient is "* * * informed by competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured, whichever date occurs first."[10]

This court's adoption of the discovery rule in the context of a medical malpractice action today is also consistent with recent holdings by this court in other areas of the law. For instance, in *Kunz* v. *Buckeye Union Ins. Co.* (1982), 1 Ohio St. 3d 79, 82, this court held that a cause of action against an insurance agent for failure to obtain coverage accrued at the date of loss rather than at the time of the procurement of the insurance. In *Velotta* v. *Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St. 2d 376, it was held that the actual injury rule applied in an action for negligence brought by a vendee against the builder-vendor of a completed residence.

In view of the foregoing, this court finds that it is within its power to adopt a discovery rule, a rule which will ameliorate the obvious and flagrant injustice frequently resulting from the operation of the termination rule, and hence holds that under R.C. 2305.11(A), a cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence

---

[8] See, generally, cases cited in 80 A.L.R. 2d 368, 388, and those listed in the A.L.R. 2d Later Case Service, at 174-175.

[9] The Supreme Court of Oregon noted as follows in *Frohs* v. *Greene* (1969), 253 Ore. 1, 3-4, 452 P. 2d 564: "On a theoretical basis it is impossible to justify the applicability of the discovery rule to one kind of malpractice and not to another. The reason for the application of the discovery rule is the same in each instance. It is manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists. This is true whether the malpractice consists of leaving a foreign object in the body or whether it consists of faulty diagnosis or treatment."

[10] Admittedly, *O'Stricker* is distinguishable from the instant case in that it was brought in the context of a personal injury action pursuant to R.C. 2305.10, whereas the case at bar was brought in the context of a medical malpractice action pursuant to R.C. 2305.11. This is not dispositive, however, for this court has noted that application of the discovery rule to statutes of limitations "obtains, in principle, irrespective of whether the case is treated as belonging under R.C. 2305.10 or under 2305.11." *Melnyk, supra,* at 199, fn. 1.

should have discovered, the resulting injury. Accordingly, the judgment of the court of appeals is reversed and this cause is remanded to the trial court for further proceedings consistent with this opinion.[11]

*Judgment reversed and*
*cause remanded.*

CELEBREZZE, C.J., SWEENEY, LOCHER, C. BROWN and J.P. CELEBREZZE, JJ., concur.

HOLMES, J., dissents in part.

HOLMES, J., dissenting in part. I must dissent in part from the majority opinion in that, in its broad application of the "discovery rule" to medical malpractice cases, the majority has completely disregarded the specific public policy as pronounced by the General Assembly. By establishing the broad principle that the discovery rule shall apply to the medical malpractice action statute of limitations contained in R.C. 2305.11(A), the court completely overlooks the import and meaning of R.C. 2305.11(B).

My joinder with the majority in the syllabus law of *O'Stricker* v. *Jim Walter Corp.* (1983), 4 Ohio St. 3d 84, which applied the "discovery rule" to the statute of limitations contained in R.C. 2305.10 for bodily injury actions, was based upon a number of factors. First, this court, in *Melnyk* v. *Cleveland Clinic* (1972), 32 Ohio St. 2d 198 [61 O.O.2d 430], had to a limited degree discarded the "termination of relationship" rule and applied the "discovery rule" as to "foreign bodies" left in patients by physicians. Second, the General Assembly, in 1980, enacted an amendment to R.C. 2305.10 which established the "discovery rule" for bodily injury caused by exposure to asbestos or to chromium in any of its chemical forms.

It was my basic thought in concurring in *O'Stricker, supra,* that it was fundamentally fair to extend the discovery rule to other than the foreign body cases, particularly to encompass those cases where the person had been exposed to the asbestos or chemical which often has an extended latency period prior to evidencing injury. Also, it was my view that the General Assembly had, in the stated 1980 amendment to R.C. 2305.10, expressed the public policy of the state to adopt the discovery rule to those types of cases involved in *O'Stricker,* and it would be reasonable as well as logical to extend such rule to other injuries where there existed a latency in the discovery thereof.

I am willing to concede that in keeping with the announced "discovery rule" as being applicable to R.C. 2305.10, fundamental fairness would also

---

[11] This court expresses no opinion whatsoever as to whether appellant's decedent had timely pursued her claim.

reasonably extend such rule to toll the statute of limitations in R.C. 2305.11(A) for medical malpractice actions. However, the General Assembly has determined as a matter of law that such tolling shall not continue indefinitely. With the enactment of R.C. 2305.11(B), the General Assembly again declared a public policy of the state of Ohio which was to the effect that the increase of medical malpractice actions presented a public concern and, in keeping with such concern, enacted as an emergency measure the absolute four-year statute of limitations, regardless of when the action accrued.

R.C. 2305.11(B) provides in pertinent part:

"In no event shall any medical claim against a physician, podiatrist, or a hospital * * * be brought more than four years after the act or omission constituting the alleged malpractice occurred. * * *"

In *Vance* v. *St. Vincent Hospital* (1980), 64 Ohio St. 2d 36 [18 O.O.3d 216], this court, in considering R.C. 2305.11(B), stated, at page 41:

"It can readily be seen that, prior to the adoption of R.C. 2305.11(B), a medical malpractice action could, under certain circumstances, be timely filed many years after the malpractice itself occurred, for the reason that the patient's cause of action does not necessarily accrue simultaneously with the act or omission constituting the malpractice. In the *Melnyk* case, for example, the plaintiff's action was deemed timely although filed nearly 11 years from the allegedly negligent surgery.

"We do not believe the purpose of the General Assembly in adopting R.C. 2305.11(B) while leaving R.C. 2305.11(A) virtually unchanged was to alter this court's prior interpretations of the medical malpractice statute of limitations, but rather was to establish, as a rule of general applicability, a maximum period of four years from the alleged malpractice itself within which a potential plaintiff must bring his action irrespective of the date on which his cause of action accrues. * * *"

I believe that the same principle should be applied here. The result which I would propose would permit the extension of the "discovery rule" to medical malpractice actions insofar as tolling the one-year limitations period until discovery of the injury, but would recognize the absolute four-year statute of limitations in malpractice actions, the latter of which was enacted by the General Assembly as a specific public policy of this state. That policy should be recognized and followed by this court.

Applying this principle to the facts within this case, I would find that the cause of action had not been instituted against Dr. Zirkin within the four-year statute of limitations; however, such action was apparently brought within the four-year period following the last date of the hospital-patient relationship of the decedent and Kaiser Community Health Foundation. Therefore, I would affirm the judgment as to Dr. Zirkin, but would reverse as to the defendant hospital.