LEFTWICH, Appellant,

v.

MARTELINO et al., Appellees.

[Cite as *Leftwich v. Martelino* (1997), 117 Ohio App.3d 405.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 96CA2435.

Decided Jan. 13, 1997.

*Butler, Cincione, DiCuccio, Dritz & Barnhart, N. Gerald DiCuccio* and *Gail M. Zalimeni*, for appellant.

*Bannon, Howland & Dever Co., L.P.A., Robert R. Dever* and *Robert E. Dever*, for appellee Southern Ohio Medical Center.

*Jacobson, Maynard, Tuschman & Kalur Co., L.P.A.*, and *David C. Calderhead*, for appellees Daniel A. Martelino, M.D., and Daniel A. Martelino, M.D., Inc.[1]

KLINE, Judge.

Ginger Leftwich appeals a summary judgment granted by the Scioto County Court of Common Pleas in favor of Southern Ohio Medical Center ("SOMC"). Leftwich contends that the trial court erred by granting summary judgment

---

1. Defendants-appellees Daniel A. Martelino, M.D. and Daniel A. Martelino, M.D., Inc. did not appear in this appeal.

because reasonable minds could differ as to whether Leftwich timely filed her complaint. We agree. Accordingly, we reverse the judgment of the trial court.

I

In early 1994, Leftwich visited her family physician, Dr. Will Josey, and requested treatment for several ailments, including a lump on the left side of her neck and pain in her left shoulder. Dr. Josey referred Leftwich to Dr. Daniel A. Martelino, who performed a surgical biopsy on her lymph nodes on April 27, 1994 at SOMC.

In June 1994, Leftwich returned to Dr. Josey and complained about pain on the left side of her neck and shoulder. Dr. Josey noted in his records that Leftwich was concerned that the lymph nodes on the left side of her neck were becoming enlarged again. Dr. Josey reviewed the pathology report from Dr. Martelino's biopsy and prescribed medication for the pain.

Dr. Josey's notes indicate that Leftwich visited him again in September 1994, still complaining about pain in her left shoulder. Dr. Josey noted that Leftwich injured this shoulder in October 1993. Dr. Josey injected medication into Leftwich's shoulder. Leftwich's complaints continued into February 1995, and Dr. Josey indicated in Leftwich's medical record that "[t]here seems to be some muscle wasting."

Dr. Josey referred Leftwich to Dr. T. Robert Love for an orthopedic evaluation. On February 22, 1995, Dr. Love wrote a letter to Dr. Josey in which he opined that Leftwich "sustained an injury to the accessory nerve most likely related to the neck surgery." This diagnosis was confirmed by another doctor in April 1995.

Leftwich met with her attorney, who attempted to determine when the one-year statute of limitations for a medical malpractice action began to run. The attorney initially thought that Leftwich's cause of action against Dr. Martelino, Daniel A. Martelino, M.D., Inc., and SOMC may have accrued in September 1994. As a precautionary measure designed to avoid the expiration of the statute of limitations, Leftwich sent a letter to Dr. Martelino and SOMC on August 9, 1995, notifying them that she was considering bringing a lawsuit against them. If effective, this letter would have extended the statute of limitations by one hundred eighty days. After further consultation and review of the records, Leftwich and her attorney concluded that the letter of notification had not been necessary because the statute of limitations would not expire until February 1996. Leftwich filed suit on December 18, 1995 against Dr. Martelino, Daniel A. Martelino, M.D., Inc., and SOMC, alleging negligent care, diagnosis, and treatment.

SOMC moved for summary judgment on the grounds that Leftwich's action was filed after the statute of limitations had expired. SOMC attached the affidavit of its risk management coordinator, who indicated that Leftwich had no care or treatment at SOMC since April 27, 1994. Leftwich responded to SOMC's motion and attached medical records from Dr. Martelino, SOMC, Dr. Josey, Dr. Love, and the doctor who confirmed Dr. Love's diagnosis. Leftwich also filed an affidavit attesting to the fact that she had no reason to believe that the pain in her neck, arm, and shoulder was related to the surgery performed by Dr. Martelino in April 1994 at SOMC before she met with Dr. Love in February 1995. Consequently, Leftwich argued that the statute of limitations did not begin to run until February 1995.

The trial court determined that Leftwich should have been aware that her pain was related to the surgery when she visited Dr. Josey in June 1994 and complained about pain on the left side of her neck and shoulder. The trial court concluded that the statute of limitations expired in June 1995, two months before Leftwich sent the notification letter. Consequently, the trial court found that the notification letter was invalid and Leftwich's cause of action was barred. The trial court granted summary judgment in favor of SOMC, noting that there was no just cause for delay.

Leftwich appeals and asserts the following assignments of error:

"*Assignment of Error No. 1*

"The trial court erred in granting defendant-appellee Southern Ohio Medical Center's motion for summary judgment, where reasonable minds could differ as to whether plaintiff-appellant, Ginger Leftwich, timely filed her complaint.

"*Assignment of Error No. 2*

"The trial court erred in granting defendant-appellee Southern Ohio Medical Center's motion for summary judgment, where the preponderance of the evidence suggests that plaintiff-appellant, Ginger Leftwich, timely filed her complaint."

## II

Before reviewing the merits of Leftwich's argument, we must consider the applicable standard of review. Summary judgment is appropriate when the following factors have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed in his or her favor. Civ.R. 56(C). "In reviewing the propriety of summary judgment, an appellate court independently reviews the record to determine if summary judgment is appropriate. Accordingly, we afford no deference to the

trial court's decision in answering that legal question." *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786, 788. See, also, *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10, 11–12.

The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. The moving party must identify those portions of the record that affirmatively demonstrate the absence of an issue of material fact on the essential elements of the nonmoving party's claims. *Id.* However, once the movant has supported his or her motion with appropriate evidentiary materials, the nonmoving party may not simply rely upon the allegations or denials in his or her pleadings. Civ.R. 56(E). The nonmoving party must present specific facts showing that there is a genuine issue for trial. *Id.; Dresher v. Burt,* 75 Ohio St.3d at 293, 662 N.E.2d at 273–274. If the nonmoving party does not so respond, the court shall enter summary judgment in the moving party's favor. Civ.R. 56(E); *Dresher v. Burt,* 75 Ohio St.3d at 293, 662 N.E.2d at 273–274. See, also, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798, 800–802.

## III

Leftwich explains in her appellate brief that she asserts the first assignment of error in case the determination of whether she timely filed her complaint is a factual question and the second assignment of error in case the determination is a legal question. Because a motion for summary judgment concerns both legal and factual issues, we will consider Leftwich's assignments of error together.

Leftwich contends that the trial court erred by finding that the statute of limitations for her action against SOMC expired in June 1995. The statute of limitations for actions against surgeons is prescribed by R.C. 2305.11(B)(1):

"[A]n action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued, except that, if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given."

## A

We first determine that Leftwich's one-hundred-eighty-day notification letter, sent on August 9, 1995, is not relevant to this decision. SOMC originally argued

that the statute of limitations expired in April 1995, one year after Leftwich's surgery. In its appellate brief, SOMC now agrees with the trial court that the statute of limitations expired in June 1995. If SOMC is correct, Leftwich's one-hundred-eighty-day notification letter was filed too late. Leftwich disagrees with this position and contends that the statute of limitations did not expire until February 1996, one year after Dr. Love opined that her pain was related to the surgery. If Leftwich is correct, the notification letter was unnecessary because she filed her complaint in December 1995 before the statute of limitations expired. Either way, the notification letter is irrelevant.

We note that although R.C. 2305.11(B)(1) provides that the action may be commenced within the one-hundred-eighty-day period after the notice is given, we do not interpret this to mean that Leftwich was required to file her suit within this period if the statute of limitations would not yet have expired after the one hundred eighty days. We do not believe that the General Assembly intended the notice provision to limit the one-year statute of limitations period. Furthermore, we do not find that, by mailing the letter in August 1995, Leftwich was conceding that the statute of limitations would have otherwise expired around that date. We will not punish a party for taking a precautionary measure meant to preserve the party's cause of action.

### B

We must now determine whether the statute of limitations for Leftwich's case expired before she filed her complaint in December 1995. To make this determination, we must examine the case law concerning when a cause of action for medical malpractice accrues.

In *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438, syllabus, the Supreme Court of Ohio held that the statute of limitations for a medical malpractice cause of action begins to run when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury. The Supreme Court designated this test the "discovery rule." *Id.* at 112, 5 OBR at 247–248, 449 N.E.2d at 439–440. The Supreme Court noted that the use of this rule would "ease[ ] the unconscionable result to innocent victims who by exercising even the highest degree of care could not have discovered the cited wrong." *Id.* at 114, 5 OBR at 250, 449 N.E.2d at 441.

This test was later modified by the Supreme Court of Ohio several times. In *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, paragraph one of the syllabus, the Supreme Court set forth a three-part test to determine when a medical malpractice accrues. The Supreme Court required the

trial court to consider (1) when the injured party became aware or should have become aware of the extent and seriousness of his or her condition, (2) whether the injured party was aware or should have been aware that the condition was related to a specific professional medical service previously rendered, and (3) whether the condition would put a reasonable person on notice of the need for further inquiry as to the cause of such condition. *Id.* In establishing this factual inquiry, the Supreme Court noted that if the test had required a claimant to file suit as soon as he or she felt physical manifestations of an injury, it would encourage unfounded lawsuits by commanding the claimant to file suit against a physician whether or not the patient had any reason to associate the physical injury with the physician's prior act. *Id.* at 5, 516 N.E.2d at 207–208.

The Supreme Court refined the *Hershberger* test in *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93. The Supreme Court held that *Hershberger* requires that there be a "cognizable event" that should lead the patient to believe that the condition of which he or she complains is related to a medical procedure, treatment, or diagnosis previously rendered to the patient. *Allenius v. Thomas* at syllabus. The occurrence of a cognizable event places the patient on notice of the need to pursue his or her possible remedies. *Id.* See, also, *Flowers. v. Walker* (1992), 63 Ohio St.3d 546, 589 N.E.2d 1284, syllabus.

These cases indicate that the determination of when a cause of action accrues and the statute of limitations begins to run involves an analysis of the facts on a case-by-case basis. *Shadler v. Purdy* (1989), 64 Ohio App.3d 98, 103, 580 N.E.2d 822, 826. Accordingly, we must examine the facts presented by the parties and determine whether an event that should have led Leftwich to believe that her pain was related to the surgery performed by Dr. Martelino occurred within the year before she filed her complaint. If a question of fact remains as to when the cognizable event occurred, the trial court improperly granted summary judgment. See *Evans v. S. Ohio Med. Ctr.* (1995), 103 Ohio App.3d 250, 256, 659 N.E.2d 326, 330 ("We hold that the question of the existence of a cognizable event which started the statute running is one of disputed fact to be decided by the trier of fact.").

## C

Applying the case law to the facts of this case and construing the evidence in Leftwich's favor, we conclude that a question of fact remains as to when Leftwich's cognizable event occurred. In Leftwich's medical records, her family physician, Dr. Josey, did not attribute Leftwich's pain to the surgery performed by Dr. Martelino. In fact, Dr. Josey indicated that Leftwich's pain may have been related to an injury from October 1993. In her affidavit, Leftwich stated that she was not aware of any connection between her pain and the surgery until

February 1995. Furthermore, there is no evidence in the record to suggest that Leftwich ·or her physician suspected that the surgery caused her pain until February 1995.

The trial court found and SOMC argues that Leftwich experienced new pain after the surgery that she had not experienced before and that this new pain should have put Leftwich on notice that her complaints were related to the surgery. Leftwich responds that this theory would require any person with pain after surgery to suspect negligence and pursue litigation. Ohio courts have made the same observation and cautioned against speculating as to what a patient should have surmised from his or her pain. See *Flowers v. Walker*, 63 Ohio St.3d at 550, 589 N.E.2d at 1288–1289 (a patient can have an injury without having reason to believe that it was caused by malpractice); *Fisher v. Deerhake* (1987), 41 Ohio App.3d 139, 141, 534 N.E.2d 930, 932–933 (pain is a natural consequence of surgery and is not sufficient to immediately put the patient on notice that an injury resulted from malpractice).

Furthermore, the fact that Leftwich's doctors did not connect her new pain to the surgery is significant. "[T]he causes of medical problems * * * are not within the realm of a layman's knowledge." *Herr v. Robinson Mem. Hosp.* (1990), 49 Ohio St.3d 6, 9, 550 N.E.2d 159, 162. Patients are entitled to rely on the judgment of their doctors. To suggest that this reliance is unreasonable would impair the doctor-patient relationship. *Id.* In this case, Leftwich relied upon her family physician, Dr. Josey, who apparently gave her no indication that Dr. Martelino's surgery caused her injury.

Similar factual situations appear in medical malpractice cases in which doctors did not recognize a previous doctor's negligence. For example, in *Tober v. Kaiser Found. Hosp.* (1992), 79 Ohio App.3d 333, 607 N.E.2d 469, a doctor diagnosed the patient as having multiple sclerosis in February 1977. Physicians who treated the patient after this diagnosis either confirmed the diagnosis or expressed no opinion. The patient's condition did not improve, and in January 1986, a new doctor told the patient that he had been misdiagnosed. The patient averred that before January 1986, he was not aware that he may have been misdiagnosed by the original physician. The Cuyahoga County Court of Appeals held that there was no evidence that the patient was given any indication that he was misdiagnosed before January 1986. "At the very least, the cognizable event occurred on January 14, 1986, when appellant was informed of the alleged misdiagnosis or was put on notice of the need to pursue his possible remedies." *Id.* at 340, 607 N.E.2d at 472. Accordingly, the court held that the trial court erred by granting summary judgment in favor of the doctor.

Likewise, there is no evidence that Leftwich was given any indication before February 1995 that her pain was related to the surgery performed by Dr.

Martelino. Contrary to the trial court's finding, reasonable minds can differ as to whether Leftwich should have been aware before December 1994, a year before she filed her complaint, that her pain was related to the surgery performed by Dr. Martelino at SOMC. Consequently, an issue of material fact remains as to whether Leftwich timely filed her complaint. Summary judgment was therefore improper.

## IV

In conclusion, genuine issues of material fact exist as to when the statute of limitations expired on Leftwich's claim. Accordingly, the trial court erred by granting summary judgment in favor of SOMC. We sustain Leftwich's assignments of error and reverse and remand this cause to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

PETER B. ABELE, P.J., and HARSHA, J., concur.