OPINION
Robert A. Pratt, as administrator of the estate of David Shaffer, appeals from a summary judgment for Defendant Mohan Nuthakki on Pratt's claim of medical malpractice arising from Shaffer's death. The summary judgment was entered upon a finding that the action is barred per R.C. 2305.03 because it was not commenced within the applicable limitation period. That limitation is stated in R.C. 2305.11(A), which provides that such actions must be commenced within one year after the negligence alleged or its subsequent discovery. We agree with that holding, and accordingly we will affirm the summary judgment from which the appeal was taken.
David Shaffer was admitted to Wilson Memorial Hospital in Sydney, Ohio through the hospital's emergency room on June 4, 1995. He complained of nausea and vomiting. During the previous two weeks, Shaffer's family physician, Dr. Mukesh Patel, had treated him for a respiratory-like infection and a possible urinary tract infection. Shaffer's family physician had prescribed Bactrim for the urinary tract infection. An initial examination at the hospital revealed blood in his urine and a very low platelet count.
Dr. Patel, who is an internist, was listed as Shaffer's primary care physician upon his admission to the hospital. Based on his examination of Shaffer on June 4, Patel concluded that Shaffer had thromobytopenia, a condition involving a low platelet count. Patel suspected that either Bactrim toxicity, immune thromobytopenia purpura (ITP), thrombotic thrombocytopenia purpura (TTP), or hemolysis, had caused Shaffer's condition. Patel ordered an anti-platelet antibody test that would indicate whether Bactrim was breaking down Shaffer's platelets. The test was done June 4, but the results were not available until June 7. Patel ordered Shaffer admitted to the intensive care unit at the hospital after his examination.
On the night of June 4, Patel ordered a platelet transfusion and an intravenous medication to rehydrate Shaffer. On June 5, Shaffer's platelet count had dropped despite the transfusion. Because Shaffer was not improving, Patel contacted Dr. Mohan Nuthakki, a hematologist/oncologist, and discussed Shaffer's case with him by telephone on the morning of June 5. Without conducting a physical examination of Shaffer, Nuthakki recommended high doses of steroids and another platelet transfusion.
Dr. Orem, a cardiologist, saw Shaffer on the morning of June 5. Tests revealed a possibility that Shaffer had suffered a heart attack the previous night or that fluid was collecting around his heart. Orem could not follow the usual course of treatment for these problems because Shaffer's platelet count was too low.
Nuthakki saw Shaffer at 3:25 p.m. on June 5. Nuthakki did a bone marrow biopsy at that time. The biopsy revealed that Shaffer's bone marrow was normal. Nuthakki instructed Patel to continue the high dose of steroids and stated that if Shaffer's platelet count did not improve by the next day, Shaffer might need plasmaphoresis, a treatment in which whole plasma is taken out of the body, cleaned, and then returned to the body.
Dr. Jilani, an associate of Nuthakki's, saw Shaffer on the morning of June 6. Shaffer's platelet count had dropped further. Jilani decided to perform the plasmaphoresis and to transfer Shaffer to Good Samaritan Hospital in Dayton because Wilson Memorial was not equipped to perform the procedure. Before the procedure could be performed, Shaffer went into convulsions. Shaffer died of cardiac arrest an hour later.
Shaffer's parents contacted an attorney within two or three days after their son's death on June 6, 1995. On July 10, 1995, an attorney for Shaffer's parents sent Nuthakki a letter requesting his records concerning his treatment of Shaffer. On July 17, 1995, Nuthakki sent Shaffer's hospital records, and indicated that he did not have any office records.
Shaffer's parents met with Patel in July 1995 to discuss questions that they had concerning the hospital's records. They also discussed the care that Shaffer had received at Wilson Memorial Hospital. During the meeting, Patel told Shaffer's parents that there were some lapses.
On December 5, 1996, the administrator of Shaffer's estate and his parents commenced this action against Patel, several of the specialists who had cared for Shaffer, the hospitals, and two unnamed doctors.[1] However, neither Nuthakki nor Jilani were named as defendants in the action. The Plaintiffs alleged that their son had not been properly cared for and treated by the Defendants.
The Plaintiffs deposed Patel on March 12, 1998. The Plaintiffs thereafter filed an amended complaint on April 14, 1998, adding Nuthakki as a defendant. Nuthakki filed an answer and then a motion for summary judgment arguing that the action against him is barred per R.C. 2305.03 because it was not commenced within the one-year period that R.C. 2305.11(A) prescribes.
In opposing Defendant Nuthakki's summary judgment motion, Plaintiffs argued that the one-year period for which R.C.2305.11(A) provides was tolled until they discovered Nuthakki's negligence. That occurred, according to Plaintiffs, when they deposed Patel on March 12, 1998, and learned from Patel of the conversation he had with Nuthakki on the morning of June 5, 1995, concerning David Shaffer's treatment. That, and only that, was the cognizable event that commenced the one-year period, according to Plaintiffs. They then filed their complaint against Nuthakki two days later, on March 14, 1998, well within the period required.
The trial court granted Nuthakki's motion for summary judgment. The court found that "the Plaintiffs knew by July 11, 1995 that their son had died due to the possible negligence of the doctors who treated him," and that they knew Nuthakki was one of Shaffer's doctors. The court concluded that the cognizable event triggering the statute of limitations applicable to their action against Nuthakki therefore occurred on or before July 11, 1995. The trial court held that the one-year statute of limitations barred the action that the Plaintiffs commenced against Nuthakki on April 14, 1998, more than two years later.
The Plaintiffs timely appealed, presenting one assignment of error.
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF MOHAN R. NUTHAKKI FINDING THAT NO MATERIAL ISSUE OF FACT EXISTED AS TO WHEN A COGNIZABLE EVENT OCCURRED SO AS TO BEGIN THE STATUTE OF LIMITATIONS PERIOD AS IT RELATES TO PROFESSIONAL CARE AND TREATMENT BY MOHAN R. NUTHAKKI. THE ISSUE OF WHETHER THE PLAINTIFF SHOULD HAVE BEEN AWARE THAT DEATH CAUSED BY THROMBOTIC THROMBOCYTOPENIA PURPURA WAS RELATED TO A SPECIFIC PROFESSIONAL SERVICE PREVIOUSLY RENDERED BY MOHAN R. NUTHAKKI AT APPROXIMATELY 9:00 A.M. ON JUNE 5, 1995 SO AS TO IMPOSE A DUTY ON THE PLAINTIFF TO DETERMINE WHETHER THE DEATH WAS THE PROXIMATE RESULT OF MALPRACTICE IS ONE FOR THE JURY.
R.C. 2305.03 states:
 A civil action, unless a different limitation is prescribed by statute, can be commenced only within the period prescribed in sections 2305.03 to 2305.22, inclusive, of the Revised Code. When interposed by proper plea by a party to an action mentioned in such sections, lapse of time shall be a bar thereto.
 A motion for summary judgment is a proper plea by which to interpose the bar which R.C. 2305.03 creates. When there is no genuine issue of material fact concerning its application and the movant is entitled to a judgment on the bar as a matter of law, the court is required to grant the motion. Civ.R. 56(C).
A medical malpractice action must be brought within one year after the claim for relief accrues. R.C. 2305.11(A). The claim accrues and the limitations period begins to run "when the patient discovers, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury." Oliver v. KaiserCommunity Health Found. (1983), 5 Ohio St.3d 111, syllabus."Oliver does not rely exclusively on the patient's actualdiscovery of the malpractice alleged; rather, the cause of actionaccrues when the physical injury complained of is or should havebeen discovered by the patient." Richards v. St. Thomas Hospital
(1986), 24 Ohio St.3d 27, 28.
When applying the statute of limitations pursuant to R.C.2305.11(A), a trial court must make the following factual determinations:
 [1] when the injured party became aware, or should have become aware, of the extent and seriousness of his condition . . .;
 [2] whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and
 [3] whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition.
Hershberger v. Akron City Hosp. (1987), 34 Ohio St.3d 1,5-6.
The rule of Hershberger requires the occurrence of acognizable event. Allenius v. Thomas (1989), 42 Ohio St.3d 131,syllabus. "A `cognizable event' is the occurrence of facts andcircumstances which lead, or should lead, the patient to believethat the physical condition or injury of which she complains isrelated to a medical diagnosis, treatment, or procedure that thepatient previously received." Flowers v. Walker (1992), 63 Ohio St.3d 546,549 (citing Allenius, supra).
 The occurrence of a `cognizable event' imposes upon the plaintiff the duty to (1) determine whether the injury suffered is the proximate result of malpractice and (2) ascertain the identity of the tortfeasor or tortfeasors.
Id. Syllabus by the Court. "A plaintiff need not have discoveredall the relevant facts necessary to file a claim in order totrigger the statute of limitations." Id. at 549., Plaintiffs argue that a cognizable event that could have triggered the statute of limitations governing their claim against Nuthakki did not occur until they deposed Patel on March 12, 1998, and discovered that he had discussed his medical treatment of Shaffer with Nuthakki. In other words, that the term the statute imposes was tolled until then.
Shaffer died on June 6, 1995. His parents contacted an attorney within a few days of his death. On July 10, that attorney sent Nuthakki a letter requesting his medical records concerning his treatment of Shaffer. Nuthakki sent his records to the attorney on July 17, 1995.
As of July 17, 1995, Plaintiffs were aware that Nuthakki was one of the physicians who had provided the medical care that their son received prior to his death, if only by way of a consultation with Patel. Plaintiffs, who had retained an attorney to investigate a possible claim of malpractice, obviously suspected that their son's death was related to the possibly negligent medical care he had received. Plaintiffs then had a duty to determine Nuthakki's possible negligence and to commence a malpractice action against him within the time that R.C.2305.11(A) prescribes.
Counsel for Plaintiffs argues that he could have been subject to Civ.R. 11 sanctions had he filed this action against Nuthakki before he learned of Nuthakki's particular advice to Patel. That may be so, but it demonstrates the need for prompt investigation of medical malpractice claims to avoid that quandary. In this age of medical subspecialties, primary care physicians frequently consult with subspecialists. If the primary care physician is later accused of malpractice, he will likely point to the consultation to show that his own duty of care was satisfied. That prospect demonstrates the need to investigate and prosecute claims thoroughly and promptly. Whether the one year term prescribed by R.C. 2305.11(A) is unreasonably short in relation to the complexity of such matters is a policy question committed to the General Assembly, not a question of law for the courts. Plaintiffs also argue that material issues of fact preclude summary judgment because whether a cognizable event occurred that triggered the statute of limitations is an issue for the jury to determine. We do not agree. "Whether the `cognizable event' relates to the discovery of the tortfeasor's identity is a question of law."Flowers, supra, 550-51. "[I]t is a fundamental tenet of jury trialprocedure that the judge decides questions of law . . ." Gallagherv. Cleveland Browns Football Co. (1996), 74 Ohio St.3d 427, 436. The trial court thus did not err in failing to submit the issue to a jury.
The Plaintiffs' sole assignment of error is overruled.
Having overruled the Plaintiffs' assignment of error, the judgment of the trial court will be affirmed.
 ___________________ GRADY, P.J.
BROGAN, J. and FAIN, J., concur.
[1] The action against Patel and others was filed one year and 180 days after Shaffer's death, suggesting that the Plaintiffs employed the notice creating a 180-day extension for which R.C. 2305.11(B)(1) provides. That action remains pending.