This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants Mary Ann and Joseph Corcino appeal the decision of the Lorain County Court of Common Pleas granting summary judgment to appellees Juris Dakters, M.D. and Neurosurgical Services, Inc. and the decision granting summary judgment to appellee Rawinson Fernando, M.D. This Court reverses and remands the cause for further proceedings.
 I.
On December 7, 1989, Mary Ann suffered the first of three strokes that are the subject of this action. While in the hospital following her first stroke, Mary Ann was treated by Dr. Fernando. Tests revealed the cause of Mary Ann's 1989 stroke to be an atherosclerotic occlusion, or blockage, of the left carotid artery, causing a lack of blood flow to the brain. Dr. Fernando referred Mary Ann to Dr. Dakters, a neurosurgeon, for a determination as to whether a carotid endarterectomy[1] should be performed in an attempt to open up the blocked artery. Dr. Dakters determined that Mary Ann was not a candidate for the surgery. Dr. Fernando provided further care concerning Mary Ann's recovery and rehabilitation, and Mary Ann recovered almost completely from the 1989 stroke.
On January 11, 1993, Mary Ann suffered a second stroke from a lack of blood flow from the left carotid artery. The 1993 stroke resulted in paralysis of the right side of Mary Ann's body[2] and severe cognitive dysfunction. On May 2, 1995, Dr. Hazen performed an endarterectomy on Mary Ann's right carotid after it was discovered that her right carotid had become significantly blocked. Mary Ann suffered her third stroke post-operatively. The third stroke rendered Mary Ann a quadriplegic.
On April 3, 1996, the Corcinos sent 180-day letters to extend the statute of limitations as provided by statute. The Corcinos filed their complaint on October 3, 1996 against Neurosurgical Services, Inc., Dr. Dakters, Dr. Fernando, M.R. Chohan, M.D., and Gale Hazen, M.D, alleging a cause of action for medical malpractice and spousal derivative claims. The Corcinos voluntarily dismissed Dr. Hazen on March 4, 1999.
On July 7, 2000, Dr. Fernando filed his motion for summary judgment. The trial court granted Dr. Fernando's motion on September 8, 2000. Dr. Dakters and Neurosurgical Services filed their motion for summary judgment on December 12, 2000. The trial court granted their motion on January 24, 2001. At this time, the only remaining defendant was Dr. Chohan. On July 25, 2001, the Corcinos voluntarily dismissed Dr. Chohan. This appeal followed.
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE GROUND THAT PLAINTIFFS-APPELLANTS WERE BARRED BY EXPIRATION OF THE STATUTE OF LIMITATIONS WHEN THE STATUTE OF LIMITATIONS WAS TOLLED BY APPLICATION OF THE "DISCOVERY RULE."
In their sole assignment of error, appellants challenge the trial court's decisions to grant summary judgment to Dr. Fernando and to Neurosurgical Services and Dr. Dakter.[3] Appellants argue that their action was not barred by the statute of limitations because it was tolled by the discovery rule. Although this Court disagrees with the basis for appellants' argument, this Court agrees with the conclusion that summary judgment was improper.
An appellate court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
Pursuant to Civil Rule 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The non-moving party must then present evidence that some issue of material fact remains for the trial court to resolve.Id.
The statute of limitations for medical malpractice actions is set forth in R.C. 2305.11(B)(1). R.C. 2305.11(B)(1) provides, in pertinent part,
 [a]n action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued, except that, if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.
A spouse's derivative claims are included within the one-year statute of limitations. R.C. 2305.11(D)(3) and (7). A cause of action for medical malpractice accrues and the R.C. 2305.11 limitations period begins to run upon the latter of either (1) the termination of the physician-patient relationship for that condition, or (2) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury. Oliver v. Kaiser Community Health Foundation (1983),5 Ohio St.3d 111, syllabus. Thus, the discovery rule tolls the applicable statute of limitations in medical malpractice actions.
The occurrence of a cognizable event triggers the running of the statute of limitations under the discovery rule. Akers v. Alonzo (1992),65 Ohio St.3d 422, 425. A cognizable event is "some noteworthy event * * * which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place." Id., citingAllenius v. Thomas (1989), 42 Ohio St.3d 131, 134. Once the cognizable event occurs, the plaintiff must (1) determine whether the injury suffered is the proximate result of malpractice and (2) ascertain the identity of the tortfeasor or tortfeasors. Flowers v. Walker (1992),63 Ohio St.3d 546, syllabus. Thus, the identification of the cognizable event imposes a duty upon the plaintiff to investigate his case completely.
The parties filed various depositions of expert witnesses in support of their arguments. Appellants argue that the statute of limitations for their claims was tolled by the discovery rule. They claim that the cognizable event occurred in May 1995, when Mary Ann discovered from another physician that, contrary to what she had been told by her physicians in 1989 and 1990, she was a proper candidate for a carotid endarterectomy. Appellees argue that the Corcinos either knew or should have known of the permanent nature of Mary Ann's condition at the time of her second stroke in 1991. Appellees argue that at this time, the Corcinos should have investigated Mary Ann's condition to determine if it resulted from medical malpractice.
However, appellees fail to provide evidence of the kind listed in Civ.R. 56 to support their claim. Instead, appellees present depositions and medical records which address little more than opinions concerning the appropriate standard of care and Mary Ann's physical condition after the strokes. The extent of Mary Ann's injury after her second stroke is not the relevant issue in this appeal. The relevant issue is at what point her condition would have alerted a reasonable patient that an improper medical procedure, treatment, or diagnosis has taken place. SeeAkers, 65 Ohio St.3d at 425, citing Allenius, 42 Ohio St.3d at 134. Appellees present no evidence to substantiate their claim that the mere occurrence of Mary Ann's second stroke should have put the Corcinos on notice to investigate whether her injury was the proximate result of malpractice. See Flowers, 63 Ohio St.3d at syllabus.
Similarly, appellants present no evidence to substantiate their claim that the cognizable event occurred in May 1995. As such, genuine issues of material fact remain to be litigated. If questions of fact remain as to the date of the cognizable event, summary judgment is not proper.Leftwich v. Martelino (1997), 117 Ohio App.3d 405, 411. See, also, Evansv. Southern Ohio Med. Ctr. (1995), 103 Ohio App.3d 250, 256. In the casesub judice, reasonable minds could come to different conclusions concerning what date the cognizable event took place. Summary judgment was therefore improper.
The assignment of error is sustained to the extent that summary judgment was improper.
 III.
Having sustained appellants' assignment of error, this Court reverses the decision of the Lorain County Court of Common Pleas granting summary judgment to appellees and remands the cause for further proceedings.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellees.
Exceptions.
BATCHELDER, P.J., BAIRD, J. CONCUR.
[1] Carotid endarterectomy is a surgical procedure whereby a surgeon attempts to open an artery that has been blocked by atherosclerotic plaque.
[2] Generally, the left carotid artery supplies blood to the left hemisphere of the brain, which in turn controls the motor function of the right side of the body. Therefore, a lack of blood to the left hemisphere of the brain would result in paralysis in the right side of the body, and vice versa.
[3] Even though appellee Dr. Fernando and appellees Dr. Dakters and Neurosurgical Services filed separate briefs, we consider their arguments together because each argument concerns only the application of the discovery rule and the date of the cognizable event.