BLAKEMAN, Admr., Appellant,

v.

CONDORODIS et al., Appellees.

[Cite as *Blakeman v. Condorodis* (1991), 75 Ohio App.3d 393.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900278.

Decided July 10, 1991.

*William C. Knapp,* for appellant.

*Jacobson, Maynard, Tuschman & Kalur, Pamela W. Popp* and *James P. Triona; Steven J. Hupp,* for appellees.

---

*Per Curiam.*

Plaintiff-appellant, Lanny Blakeman, the administrator of the estate of Adam Blakeman, appeals from the trial court's order granting a directed verdict in favor of the defendant-appellee, Dr. C.J. Condorodis, in a survivorship and wrongful death action. On appeal, the plaintiff asserts three assignments of error: the trial court erred (1) by granting a directed verdict in favor of Condorodis after refusing to allow the plaintiff's expert witness to testify on proximate cause, (2) by striking from the amended complaint a demand for special medical damages, and (3) by granting the motions to dismiss of defendants F.J. Froehlich, M.D., Condorodis and F.J. Froehlich, M.D., Inc. The plaintiff's first assignment of error has merit, and we reverse the trial court's order granting a directed verdict in favor of Condorodis. We find no error, however, with respect to the plaintiff's second and third assignments and affirm the trial court's orders striking the demand for medical damages and dismissing Froehlich and the defendant corporation.

## I

At trial the plaintiff attempted to prove that Condorodis negligently delivered Adam Blakeman by elective caesarian section before the infant had reached fetal maturity. As a consequence, the plaintiff contended, Adam developed infant respiratory distress/hyaline membrane disease, causing his prolonged hospitalization and ultimate death at the age of fourteen months.

The plaintiff offered as his expert witness Dr. John Williams Calkins, a board-certified obstetrician-gynecologist. Calkins testified, without objection, that, based upon his review of the medical records, the deposition of Condorodis, and his own medical expertise, Condorodis failed to meet the standard of care expected of a reasonably prudent obstetrician during his treatment of Cheryl Blakeman and her newborn son. Calkins was then asked if, based upon his review of the medical records and his own medical expertise, he had an opinion as to whether the alleged violation of the standard of care by Condorodis caused Adam Blakeman's illness and death.

Defense counsel objected, citing Evid.R. 703. The basis of the objection was that Calkins's opinion was impermissibly based upon the expert opinion of others, specifically the opinions of radiologists contained in the hospital records, since Calkins had not personally viewed the x-ray films. See *Zelenka v. Indus. Comm.* (1956), 165 Ohio St. 587, 60 O.O. 524, 138 N.E.2d 667.[1] The objection was sustained. After the jury was dismissed, a voir dire was conducted in which Calkins expressed his view, based only on the clinical data, that, because of Condorodis's negligence, Adam Blakeman developed hyaline membrane disease which led to his death. The trial judge, however, refused to permit even this testimony to be given to the jury after further questioning by defense counsel established that, unless he assumed the validity of the x-ray findings of hyaline membrane disease in the medical records, Calkins could not, without speculating, rule out other disease entities as the cause of Adam's death. In sum, the trial judge disallowed Calkins's testimony because he refused to permit him to assume the validity of x-ray evidence of hyaline membrane disease in the stipulated medical reports, and because, unless he was able to make such an assumption, the trial judge concluded, Calkins could not express his opinion on proximate cause to the requisite degree of medical certainty. See *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28 OBR 429, 504 N.E.2d 44.

Evid.R. 703 states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." "Data" is generally defined as "[o]rganized information generally used as the basis for an adjudication or decision"

---

1. It should be noted that the principle that an expert cannot base his opinion on the opinion of another, as expressed in *Zelenka, supra,* has been subject to criticism. See *Seley v. G.D. Searle & Co.* (1984), 67 Ohio St.2d 192, 206, 21 O.O.3d 121, 129, 423 N.E.2d 831, 842. Significantly, Justice Sweeney, writing for the majority in *Searle,* expressly declined to pass on the continued validity of the *Zelenka* rule. *Id.* For reasons which are discussed in the text, *infra,* we find that the facts contained in the record below are sufficiently distinguishable from the facts of *Zelenka* to preclude its application here, even assuming the continued validity of the *Zelenka* rule. We note, also, that *Zelenka* was decided prior to the effective date of the Ohio Rules of Evidence.

or "organized information, collected for specific purpose." Black's Law Dictionary (5 Ed.Rev.1979) 356.

In the case *sub judice,* the medical records containing the radiologists' reports were admitted in evidence by agreement of the parties.[2] The radiologists' findings and diagnoses were, therefore, "data" of record under Evid.R. 703. A radiologists's enumeration of the contents of an x-ray is not, in this regard, mere medical hypothesis, but, rather, a learned statement of an observable condition falling under the definition of "data" or organized information. Such x-ray reports are relied upon regularly by treating physicians to aid in their diagnostic evaluation. Calkins was, therefore, entitled to express an opinion on causation in response to a hypothetical question which assumed the validity of the x-ray reports of record, just as any other expert would, under Evid.R. 703, be entitled to express an opinion in response to a hypothetical question which assumed the validity of "data" of record.

Moreover, the fact that Calkins did not personally view the x-rays goes to the weight and not to the admissibility of his expert opinion. See *Virag v. Allstate Ins. Co.* (Dec. 14, 1989), Cuyahoga App. No. 56391, unreported, 1989 WL 151291. The materiality of Calkins's testimony did not depend upon whether he was capable of diagnosing hyaline membrane disease by x-ray. The x-ray findings of hyaline membrane disease were already part of the stipulated medical records. Rather, the materiality of Calkins's testimony was his opinion on proximate cause assuming the validity of the x-ray findings of record. If the defense wished to make a collateral challenge to Calkins's opinion because of error in the radiologists' diagnoses and findings, it could have offered testimony or evidence from radiologists to contradict the x-ray readings of hyaline membrane disease.

We conclude, therefore, that the trial court erroneously sustained counsel's objection and abused its discretion in not allowing Calkins to testify. Furthermore, based upon the proffer of his testimony, and the stipulations at the close of the plaintiff's case, we hold that the court erred in directing a verdict in favor of Condorodis, since the admitted and proffered evidence did not entitle him to a verdict as a matter of law. See *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467; *Humphrey v. Dent*

---

2. Even had the parties not agreed to their admissibility, the plaintiff-appellant could have introduced the medical records, including the x-ray interpretations containing the radiologists' diagnoses and findings, under the business-record exception to the hearsay rule. Evid.R. 803(6). See *Hytha v. Schwendeman* (1974), 40 Ohio App.2d 478, 69 O.O.2d 419, 320 N.E.2d 312; see, also, *Weis v. Weis* (1947), 147 Ohio St. 416, 34 O.O. 350, 72 N.E.2d 245; *Stengel v. Belcher* (C.A.6, 1975), 522 F.2d 438. The justification for this application of the business records exception lies in the substantial guarantee of trustworthiness that attends the inherent need for accuracy in the preparation and use of medical records.

(1980), 62 Ohio St.2d 273, 16 O.O.3d 321, 405 N.E.2d 284. The plaintiff's first assignment of error is, therefore, well taken.[3]

## II

■ The defendants moved to strike from the plaintiff's amended complaint the demand for Adam Blakeman's medical expenses as damages. The motion was grounded on the principle that such medical expenses were the obligation of the parents who incurred the expense, and, therefore, a claim for their recovery could not be brought by the estate of the child, but rather, by the parents (whose claim was barred by the statute of limitations). See *Grindell v. Huber* (1971), 28 Ohio St.2d 71, 57 O.O.2d 259, 275 N.E.2d 614. The trial court granted the motion, agreeing that the estate of Adam Blakeman was not the real party in interest to claim recovery for such expenses.

In *Grindell v. Huber, supra,* the Ohio Supreme Court held:

"Where a minor child sustains an injury allegedly as the result of negligence of a defendant, two *separate and distinct* causes of action arise: an action by the minor child for his personal injuries and a derivative action in favor of the parents of the child for the loss of his services and his medical expenses. (Paragraph three of the syllabus of *Whitehead v. General Tel. Co.,* 20 Ohio St.2d 108 [49 O.O.2d 435, 254 N.E.2d 10], approved and followed.)" (Emphasis added.) *Grindell, supra,* paragraph one of the syllabus.

Notwithstanding this authority, the plaintiff contends that the estate of Adam Blakeman is legally liable for his medical expenses as necessaries. Generally, however, a minor is only secondarily liable to one who furnishes necessaries.

"The liability of an infant for necessaries is * * * dependent upon whether or not he has an existing supply of necessaries, or parents and guardians who are able and willing to supply him with the necessities of life. The mere fact that the goods or services are in general considered necessaries does not make them necessary to the particular infant if he has already been supplied with them. * * * Moreover, even if all other tests of what is necessary are met it must appear that the goods or services were supplied on the credit of the infant and not of his parent, guardian or third person. Therefore, the mere fact that the creditor has supplied necessaries to the family unit of which the infant is a part does not render the infant liable unless he contracted for the necessaries. Thus, the liability, although quasi-contractual, requires that

---

**3.** As we hold that the trial court erred by refusing to allow Calkins to testify, we need not address the plaintiff's argument that the trial court abused its discretion by refusing to grant a continuance to allow Calkins to personally view the x-ray films.

there be a contract with the infant." Calamari & Perillo, Contracts (2 Ed.1977) 247, Section 8–8. Accord *Univ. of Cincinnati Hosp. v. Cohen* (1989), 57 Ohio App.3d 30, 566 N.E.2d 187.

In the case *sub judice*, there is no evidence of record that the parents, or their insurance company, failed or refused to pay any of the medical expenses incurred, or that the medical expenses were supplied on the credit of the infant. We agree with the trial court that the estate of Adam Blakeman was not the real party in interest to recover the medical expenses. The plaintiff's second assignment of error is, therefore, overruled.

### III

The plaintiff asserts in his third assignment of error that the trial court erred by granting the motions for dismissal of Dr. F.J. Froehlich and the corporate defendant, C.J. Condorodis, M.D., and F.J. Froehlich, M.D., Inc. Neither defendant was named in the original complaint filed on May 15, 1984. Both were named for the first time in the plaintiff's amended complaint filed on March 16, 1989. The defendants moved for dismissal based upon the plaintiff's failure to obtain leave from the trial court to join additional parties, and because the claims against these defendants were barred by the statute of limitations contained in R.C. 2305.11(A).[4] The trial court did not articulate its reasons for granting the motions in its entry.

The trial court had discretion to refuse to recognize the additional parties because of the plaintiff's failure to obtain leave to file an amended complaint. See Civ.R. 15(A); *Zinner v. Romberg* (Oct. 27, 1983), Cuyahoga App. No. 46494, unreported, 1983 WL 2721. Upon the principle that lower court proceedings are entitled to a presumption of regularity, we conclude that the plaintiff's failure to seek leave was a basis for the lower court's ruling, and we find no abuse of discretion demonstrated. We overrule the plaintiff's third assignment of error on this basis alone.

Furthermore, we agree that the claims against Froehlich and the corporate defendant were barred by the statute of limitations contained in R.C. 2305.-11(A), now R.C. 2305.11(B), which provides that an action for malpractice shall be brought within one year after the cause accrued.[5] In the case *sub judice*,

---

4. R.C. 2305.11(A), currently R.C. 2305.11(B), was the applicable statute of limitations in effect at the time the action was brought.

5. We reject the argument advanced by the plaintiff that the claims against Froehlich and the defendant corporation are not medical claims for malpractice governed by the statute of limitations found at R.C. 2305.11 because they are premised on corporate and partnership liability. We also reject as feckless the plaintiff's argument that the statute of limitations

the action accrued, at the latest, on the date of Adam Blakeman's death on January 20, 1984. See *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204; *Singleton v. Suhr* (May 19, 1989), Cuyahoga App. No. 55367, unreported, 1989 WL 54383; *Kimball v. Akron Gen. Med. Ctr.* (June 8, 1988), Summit App. No. 13358, unreported, 1988 WL 61044. The statute of limitations, therefore, expired on January 20, 1985, and the claims against Froehlich and the corporation were not timely filed. The plaintiff in amending his complaint named new parties, who would be prejudiced if denied reliance on the affirmative defense of the statute of limitations, which prevents the plaintiff from resort to the "relation back" provision of Civ.R. 15(C). See *Amerine v. Haughton Elevator Co.* (1989), 42 Ohio St.3d 57, 537 N.E.2d 208; see, also, *Qualls v. Brown* (Aug. 17, 1982), Meigs App. No. 320, unreported, 1982 WL 3517.

We sustain, therefore, only the plaintiff's first assignment of error and overrule his remaining two. The order of the trial court granting a directed verdict in favor of Condorodis is reversed and the cause remanded for further proceedings consistent with this decision. The order of the trial court striking the claim for medical expenses and dismissing Froehlich and the defendant corporation is hereby affirmed.

*Judgment accordingly.*

GORMAN, P.J., SHANNON and KLUSMEIER, JJ., concur.

---

was tolled, regardless of Adam Blakeman's death at fourteen months, until he would have been emancipated at the age of eighteen. We find no support in logic or law for this proposition.