For the reasons that follow, I must respectfully dissent in this matter. The record in this matter is perfectly clear that on June 6, 1998, appellant was at work cutting, inspecting and packing drain hoses for automobiles. The work required her to cut the hoses using an electrical saw, and when she had completed a bundle of twenty hoses, she would "turn and put it in a container on the floor * * *." At trial appellant testified, under oath, that she injured her knee when she was turning to put a bundle of hoses in a container. Two of her co-workers testified, under oath, that they heard a loud "pop" at the time of the incident, but that they did not actually see the injury.
Appellant did not finish her shift and was permitted to go home early after telling her supervisor that her knee hurt. The following day, June 7, 1998, appellant was treated at the Emergency Department of Trumbull Memorial Hospital, where her "Chief Medical Complaint" indicates that a "46 year-old white female who presents to the Emergency Department complaining of right knee pain. Pt states while working yesterday, she began to have pain in her right knee. She states that `as she would movesideways along the assembly line she could hear pops on both sides of herknees, causing her knee to give out * * *.'" (Emphasis added)
Appellant was seen by an Orthopedic Surgeon, Doctor Michael Jurenovich, who stated under oath that "she was sent to me from the ER with an injured right knee on 6-8-98." The doctor stated that "she was referred to me by the emergency room physician the previous weekend for a twisted knee. I saw her, I offered her a cortisone injection; she deferred that idea. I thought she had torn cartilage in her knee * * *." In taking her history and performing his initial examination, Doctor Jurenovich found that "she said that she hurt her knee at work" and that "she denied any previous history of trauma other than her injury two days earlier." His physical findings indicated painful range of motion in the right knee with some swelling, pain along the medial joint line with hyperflexion.
In his trial deposition, Doctor Jurenovich indicated that approximately one month later, on July 11, 1998, "Joanne still has ongoing right knee pain with problems and swelling. I reviewed the MRI report with her from last week. Patient now likes to proceed with arthroscopic surgery of her knee sometime next month at the hospital." Ultimately the doctor performed a total knee replacement on April 22, 1999.
In answer to the question of appellant's counsel, the doctor expressed the opinion, based upon "your education, your experience, the examination of Joanne Mitchell, the history you took, your review of the diagnostic studies previously discussed, the operative notes and your many treatments * * *" that "she was hurt at work in the summer of '98." The trial court sustained appellee's objection and, thus, the jury was not permitted to hear the doctor's opinion. A defense verdict was returned for the employer.
In order to participate in the Workers' Compensation Fund, an employee must demonstrate that they have been injured in the course and scope of their employment. In matters which are outside the realm of common knowledge, the standard of proof is by competent medical evidence. It is well settled that an expert testifying on the issue of proximate cause must state an opinion with respect to the causative event in terms of probability. Stinson v. England (1994), 69 Ohio St.3d 451, paragraph one of syllabus. An expert is not required to recite any particular "magic words," but his testimony, when considered in its entirety, must be equivalent to an expression of probability. Hampton v. Eckhart (Nov. 19, 1991), Montgomery App. No. 11976, unreported, 1991 Ohio App. LEXIS 5590.
The purpose of having an expert testify is to assist the jury in understanding matters which are within the expertise of the witness. Rarely, if ever, are the experts present at the place of injury. Thus, their testimony is going to be based almost exclusively on evidence which is properly before the jury. In the case of Blakeman v. Condorodis
(1991), 75 Ohio App.3d 393, the court found it be error to exclude the testimony of a physician which relied upon x-rays which he did not personally view. The court held, properly I believe, that the basis of an expert's testimony, flawed or perfect, goes only to its weight, and not its admissibility. Id. at 396
In the instant matter, the doctor saw the patient two days after her injury at work, took a history and performed a physical examination. The trial court and my distinguished colleagues take great issue with the lack of thoroughness of the doctor in questioning the patient on the precise mechanism of injury. Such an inquiry is clearly within the realm of cross-examination and the record is replete with counsel's attempts to demonstrate to the jury that the doctor simply did not have a sufficient basis to render his opinion. They may be right. However, as a matter of law, that is a question for the jury to decide.
Evid.R. 703 requires that opinion testimony by an expert witness be based upon facts within that witness's own personal knowledge or upon facts shown by the evidence. Mahan v. Bethesda Hosp., Inc. (1992),84 Ohio App.3d 520, 525. There is no question that the issue of "sliding" and "turning" on the assembly line, followed by the "popping" noise were in evidence before the jury. It was wholly improper for the trial judge to not permit the treating physician to render an opinion based upon those admitted facts.
In Hampton the Second District Court of Appeals stated the following:
 "[i]t is not necessary that medical experts give boilerplate `legal jargon' answers to every question asked by counsel. They are not computers capable of precisely stating their opinion in legal terms. Physicians should be afforded some leeway to put forth their opinion in their own style and manner befitting their personality and keeping with their own thought process. A recitation of the appropriate legal standard is not required. What is required is that the physician's testimony when considered in its entirety, is equivalent to the legal requirements of probability. Words and phrases that connote or are equivalent to probability are sufficient." Hampton at 6-7.
 To be admissible, an expert's opinion regarding the proximate cause of an event must be expressed in terms of "probability." Stinson. "An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue." Id. The expert's testimony need not include the magic words "probability" or "certainty" but, when reviewed in its entirety, it "must be equivalent to an expression of probability." Schroeder v. Parker (Dec. 10, 1998), Cuyahoga App. No. 73907, unreported, 1998 Ohio App. LEXIS 5919.
Finally, I must respectfully take issue with the legal analysis in the majority opinion with respect to the history given by the patient to her physician. The majority suggests that when the patient stated she was injured at work, this was a hearsay statement. This is true. However, Evid. R. 803(4) clearly grants an exception to the hearsay rule for:
 "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 In a workers' compensation trial, the statements given to physicians, along with the conclusions as to their veracity made by the physicians, are at the heart and soul of the matter.
The jury had every right to know what the treating physician knew and thought. Without his opinion, their verdict is speculative at best. I am not saying that the doctor needed to be believed. But he had to be heard.
 ____________________________ JUDGE WILLIAM M. O'NEILL