BURDEN, Appellant,

v.

LUCCHESE et al., Appellees.

[Cite as *Burden v. Lucchese*, 173 Ohio App.3d 210, 2007-Ohio-4497.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–06–99.

Decided Sept. 4, 2007.

212

Joseph W. O'Neil, for appellant.

Michael J. Malone, for appellee Lima Memorial Hospital.

Stephen A. Skiver and Jerome A. McTague, for appellees Lucchese and Holistic Surgical Associates, Inc.

Jeanne M. Mullin, for appellee Wisser.

Kevin W. Popham, for appellees Hassan B. Semaan, M.D. and X–Ray, Inc.

ROGERS, Presiding Judge.

{¶ 1} Plaintiff-appellant, Dale Burden Sr., appeals the judgment of the Allen County Court of Common Pleas granting partial summary judgment to defen-

dants-appellees Hassan B. Semaan, M.D. and X–Ray, Inc.,[1] Jeffrey Wisser, D.O., and Lima Memorial Hospital. On appeal, Burden asserts that the trial court erred in granting partial summary judgment on his medical-negligence survivorship claim. Finding that Burden's medical-negligence survivorship claim against appellees was barred by the applicable statute of limitations, we affirm the judgment of the trial court.

{¶ 2} The following general facts are undisputed. On November 24, 2003, Burden's former wife, Darlene Burden, underwent a left thyroid lumpectomy performed by Dr. Christopher R. Lucchese. Evaluation of the removed portion of Darlene's thyroid revealed the presence of cancer. Consequently, on December 15, 2003, Dr. Lucchese removed the remainder of Darlene's thyroid and authorized her to return home. Two days later Burden took Darlene to the emergency room at Lima Memorial Hospital, because she had difficulty swallowing and had increased swelling in her neck. Testing indicated that Darlene had a pocket of fluid and infection in her neck; thereafter, Darlene was admitted. During the morning of December 18, Dr. Lucchese aspirated Darlene's neck, removing 70 cc's of fluid. Subsequently, the build-up of fluid returned, Darlene had difficulty breathing, and she was taken to the radiology department for a CT-guided scan. While attempting to undergo the CT-guided scan, Darlene continued having difficulty breathing, became cyanotic, and went into cardiopulmonary arrest and coded. Responding medical personnel attempted unsuccessfully to intubate Darlene, and Dr. Malaya, a responding surgeon, performed an emergency tracheotomy. Darlene's pulse was regained, but she suffered brain damage from a lack of oxygen to her brain. On December 21, 2003, Darlene died after experiencing cardiac arrest as a result of the lack of oxygen to her brain and respiratory distress.

{¶ 3} On April 1, 2005, Burden instituted medical-negligence survivorship ("negligence claim") and wrongful-death claims against Dr. Lucchese, d.b.a. Holistic Surgical Associates, Inc., and Lima Memorial. Subsequently, Burden amended his complaint to include additional information.

{¶ 4} On December 19, 2005, Burden filed a second amended complaint, naming Dr. Wisser, as well as Dr. Semaan and X–Ray, Inc., as additional defendants.

{¶ 5} During his deposition, Burden testified that he did not review any of Darlene's medical records before the deposition; that Darlene had no troubles after her first thyroid surgery in November 2003; that, on December 15, 2003,

---

1. Burden filed suit against both Dr. Semaan individually, and his employer, X–Ray, Inc. However, since the parties refer to them collectively throughout as "Dr. Semaan and X–Ray, Inc.," we elect to do the same.

Darlene had a temperature of 101 degrees following her second thyroid surgery, was told she probably had the flu, and was released; that, on December 17, 2003, someone in the Lima Memorial emergency room told him that Dr. Wisser, who was on-call for Dr. Lucchese that evening, had been notified about Darlene's situation and would take care of it the next morning; that, when he returned to Lima Memorial the next morning, Darlene's swelling had worsened, she was having trouble breathing, and had to sit up to ease her breathing; that Darlene felt better after Dr. Lucchese drained the fluid from her neck; that the fluid and swelling in Darlene's neck returned a couple of hours after Dr. Lucchese had drained it; and that a nurse called Dr. Lucchese, who ordered an ultrasound-guided scan on Darlene's neck.[2]

{¶ 6} Burden continued that his daughter accompanied Darlene to the radiology department while he waited in the lobby; that Dr. Lucchese later arrived and stated that he wanted to do another surgery on Darlene's neck to see what was going on; that no one told him (Burden) about Darlene coding at that time; that he was later informed that Darlene had coded and had been deprived of oxygen; that his daughter told him Darlene had fought to sit up to get her breath in the radiology department, but medical personnel pushed her down to get her in the CT-scan machine; that he did not discuss the events his daughter described with any medical personnel; and that once Darlene had been stabilized after coding, he spoke with Dr. Malaya about the tracheotomy performed, but Dr. Malaya was not critical of the care rendered by anyone.

{¶ 7} Burden also testified that an infectious-disease doctor involved with Darlene's care, Dr. Ellis, informed him on December 21, 2003, that there was no excuse for her death because the tracheotomy could have been done earlier; that Dr. Ellis also had a conversation with one of Burden's sons and expressed criticism regarding the CT-scan procedure; and that he contacted an attorney, who is not his current attorney, because he "just didn't think things were right."

{¶ 8} In May 2006, June 2006, and August 2006, Dr. Semaan and X–Ray, Inc., Dr. Wisser, and Lima Memorial, respectively, moved for partial summary judgment regarding Burden's negligence claim, alleging that Burden failed to comply with the applicable statute of limitations, R.C. 2305.113(A). Each appellee attached a copy of Burden's amended complaint in support of the motion for partial summary judgment. Additionally, Lima Memorial attached affidavits from its director of risk management and its statutory agent, which provided that they did not receive a 180–day letter from Burden.

---

2. Dr. Semaan testified that he later called Dr. Lucchese and decided that a CT-guided scan would be more appropriate because it would be less intrusive to Darlene's wound.

{¶ 9} In September 2006, Burden filed his response to appellees' motions for partial summary judgment and attached his affidavit, in which he provided that he did not have any medical training or a medical background; that "because [he] was curious about the treatment by Dr. Lucchese, [he] went to [his current attorney] in December, 2004"; and that in the initial meeting, his attorney did not know whether a cause of action existed against Dr. Lucchese. Burden also included in his affidavit that in early 2005, his attorney indicated a basis existed to pursue a lawsuit against Lima Memorial and Dr. Lucchese; that after his attorney advised him, he believed that Lima Memorial and Dr. Lucchese negligently harmed Darlene; that he went to his attorney to "find out what to believe"; that no one suggested the possibility of negligent treatment of Darlene within one year of her death; that Darlene was seen by two dozen specialists and medical professionals during November 2003 and December 2003; and that Dr. Wisser's and Dr. Semaan's roles were not known until Dr. Lucchese and Lima Memorial staff members were deposed in November 2005 and December 2005. Burden also attached a copy of Darlene's consent to surgery, which noted that death, bleeding, and infection were complications that could occur with any surgery.

{¶ 10} In September 2006, the trial court granted Dr. Semaan and X–Ray, Inc.'s, Dr. Wisser's, and Lima Memorial's motions for partial summary regarding Burden's negligence claim, providing:

> The Court finds that the "cognizable event" put [Burden] on notice to investigate the facts and circumstances relevant to [decedent's] claim in order to pursue [decedent's] remedies. See *Allison v. Pike Community Hospital*, 4th District No. 05CA734, 2006-Ohio-1390[, 2006 WL 751571] and *Koerber v. Cuyahoga Falls General Hospital*, 9th [District] No. 20516, 2001-Ohio-1365[, 2001 WL 1143211]. The "cognizable event" was the death of [decedent] on December 21, 2003.

> [Burden] would contend in essence, that the cognizable event didn't occur until [he] was advised by his attorney after he had completed his investigation and review in 2005. If this logic applied, the statute of limitation would never start running until a potential claimant went to his attorney and the attorney completed his/her investigation. This, the Court finds, is an illogical and absurd result. Doctors/hospitals and other care providers would never know or have any finality as to claims.

> The Court would further note that the statute of limitations was not even extended as provided by the 180–day letter pursuant to R.C. 2305.113.

\* \* \*

[Burden's] complaint and amended complaints were therefore untimely and his causes of action are barred as a matter of law as it concerns the medical negligence claims.

{¶ 11} It is from this judgment that Burden appeals, presenting the following assignment of error for our review: [3]

The trial court erred in granting partial summary judgment on plaintiff's medical negligence claim.

{¶ 12} In his sole assignment of error, Burden asserts that the trial court erred when it granted partial summary judgment on his medical-negligence claim. Specifically, Burden contends that appellees failed to set forth sufficient evidence that he should have discovered the negligence cause of action sooner than he did; that death is not a per se cognizable event; and that the cognizable event occurred when his attorney completed his investigation and determined he had a cause of action.

{¶ 13} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, 774 N.E.2d 775, at ¶ 25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222, 631 N.E.2d 150. Summary judgment is appropriate when, looking at the evidence as a whole (1) there is no genuine issue as to any material fact, (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

---

3. We note that Dr. Lucchese, d.b.a. Holistic Surgical Associates, Inc., did not file a motion for partial summary judgment prior to the trial court's September 2006 judgment entry and, accordingly, is not involved in this appeal. Additionally, we note that Dr. Wisser questioned whether the trial court's September 2006 judgment entry constituted a final appealable order given that Burden's wrongful-death claim was still pending. We find that the trial court's September 2006 judgment entry was a final appealable order and that we have jurisdiction over this appeal. See, e.g., *Walker v. Firelands Community Hosp.*, 6th Dist. No. E–06–023, 2006-Ohio-2930, 2006 WL 1580038, ¶ 17–20, discussing *State ex rel. Wright v. Adult Parole Auth.* (1996), 75 Ohio St.3d 82, 661 N.E.2d 728 (claims that arise from the same set of facts, but involve different rights and relief, are separate and independent for purposes of determining whether a final appealable order exists).

{¶ 14} The party moving for summary judgment has the initial burden of producing some evidence that demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record that affirmatively support its argument. Id. at 292, 662 N.E.2d 264. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; it may not rest on the mere allegations or denials of its pleadings. Id.; Civ.R. 56(E).

{¶ 15} R.C. 2305.113(A) provides that an action upon a medical claim "shall be commenced within one year after the cause of action accrued." In the context of medical-malpractice actions, the Ohio Supreme Court has adopted the discovery rule in determining when a cause of action accrues. *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 117, 5 OBR 247, 449 N.E.2d 438. Thus, a cause of action for a medical-malpractice claim does not accrue until either (1) the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury or (2) the physician-patient relationship for the condition terminates, whichever occurs later. *Akers v. Alonzo* (1992), 65 Ohio St.3d 422, 425, 605 N.E.2d 1, citing *Oliver*, 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438, at syllabus, and *Frysinger v. Leech* (1987), 32 Ohio St.3d 38, 512 N.E.2d 337, paragraph one of the syllabus.

{¶ 16} In *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, the Ohio Supreme Court set forth a three-prong test to determine the accrual date of a medical-malpractice action under the discovery rule, which consists of the following factors: (1) when the injured party became aware, or should have become aware, of the extent and seriousness of the condition, (2) whether the injured party was aware, or should have been aware, that the condition was related to a specific professional service previously received, and (3) whether such condition would put a reasonable person on notice of the need to inquire into the cause of the condition. Id. at 5–6, 516 N.E.2d 204.

{¶ 17} The Supreme Court further clarified how to determine the accrual date under the discovery rule by combining the *Hershberger* prongs and holding that the "extent and seriousness of the condition" used in *Hershberger* requires an occurrence of a "cognizable event," which leads, or should lead, the patient to believe that the physical condition or injury complained of is "related to a medical procedure, treatment, or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies." *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 133, 538 N.E.2d 93.

{¶ 18} Moreover, there is no requirement that a patient "must be aware of the *full* extent of the injury before there is a cognizable event. It is enough that some noteworthy event, the 'cognizable event,' has occurred which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place." (Emphasis sic.) Id. at 133–134, 538 N.E.2d 93. An individual's belief that a medical professional erred is sufficient to notify the individual of the need to investigate the circumstances and pursue possible remedies. Id. at 134, 538 N.E.2d 93. Upon the occurrence of such a cognizable event, the plaintiff has a duty to (1) determine whether the injury suffered was the proximate result of malpractice and (2) ascertain the identity of the tortfeasors. *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 589 N.E.2d 1284, syllabus.

{¶ 19} Here, Burden argues that the trial court incorrectly found Darlene's death to be a per se cognizable event and that the true cognizable event occurred when his attorney completed the investigation and determined that he had a cause of action. In the context of medical-malpractice survivorship actions, some appellate courts have held that death is necessarily the cognizable event because a reasonable person is put on notice at that point that an injury has occurred. See *Estate of Glenn v. Lake Hosp. Systems, Inc.* (May 22, 1998), 11th Dist. No. 96–L–154, 1998 WL 386188; *Blakeman v. Condorodis* (1991), 75 Ohio App.3d 393, 398, 599 N.E.2d 776; *Singleton v. Suhr* (May 18, 1989), 8th Dist. No. 55367, 1989 WL 54383; *Kimball v. Akron Gen. Med. Ctr.* (June 8, 1988), 9th Dist. No. 13358, 1988 WL 61044. However, as the Ohio Supreme Court has explained, the discovery rule applies where " 'the application of the general rule that a cause of action exists from the time the negligent act was committed would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence.' " *Oliver*, 5 Ohio St.3d at 113, 5 OBR 247, 449 N.E.2d 438, quoting *Wyler v. Tripi* (1971), 25 Ohio St.2d 164, 168, 54 O.O.2d 283, 267 N.E.2d 419.

{¶ 20} Accordingly, we decline to adopt a rule establishing death as a per se cognizable event in medical-negligence survivorship actions. Such an approach is consistent with the fairness and policy concerns expressed in *Hershberger* regarding medical-malpractice statutes of limitations that "any beginning point for the statute of limitations which is based upon the date of an act or omission and/or physical manifestations of an injury * * * would require a claimant to immediately file suit against the physician whether or not the [claimant] had any reason to associate the physical injury with the prior act. Consequently, such standards encourage the filing of unfounded lawsuits." 34 Ohio St.3d at 5, 516 N.E.2d 204. Although death may well be the cognizable event in many survivorship actions, in some cases a party may not reasonably be aware that the decedent's death may

have been the result of wrongful conduct until the occurrence of some event after the decedent's death, particularly where death is a common risk of the medical procedure undertaken by the decedent.

{¶ 21} However, we believe that Burden's argument that a cognizable event occurs when an attorney completes the investigation and determines that a cause of action exists goes too far. Indeed, *Hershberger* explicitly rejected this argument when it clarified the discovery rule, explaining that the "concept of 'legal injury' as initiating the running of the statute [of limitations] is also not without problems. Legal theories are ordinarily not within the province of the average layman. Furthermore, to utilize 'legal injury' might effectuate a complete undermining of the discovery rule since anyone could allege ignorance of his legal rights. * * * It is therefore the knowledge, actual or inferable, of *facts*, not legal theories, which initiates the running of the one-year statute of limitations." (Emphasis sic.) 34 Ohio St.3d at 5, 516 N.E.2d 204. Thus, the statute of limitations begins to run when, based on the factual circumstances, the injured party is put on notice of the need to pursue possible remedies and not when an attorney actually identifies the pertinent legal injury and remedy. Id.

{¶ 22} In the case sub judice, the trial court determined that the cognizable event triggering the accrual of the statute of limitations was Darlene's death. However, a review of the record indicates that the consent form for Darlene's surgery identified death, bleeding, and infection as risks of surgery; that Darlene developed an infection on her neck following her surgery, which caused swelling and constriction of her airway; and that the respiratory distress and lack of oxygen to her brain caused her cardiac arrest and death. Construing this evidence in a light most favorable to Burden, as we must, we cannot say that Darlene's death, by itself, should have put him on notice that malpractice had occurred.

{¶ 23} However, we find that the combination of Darlene's death, Burden's daughter's recitation of the events that took place in the radiology department, Dr. Ellis's criticism of the CT procedure to Burden's son, as well as Dr. Ellis's statement, on the date of Darlene's death, that there was no excuse for her death because the tracheotomy could have been done earlier, constituted the cognizable event that should have put Burden on notice that an improper medical procedure had occurred. Whether Burden knew that the legal injury of "negligence" might have occurred is not dispositive. Likewise, whether the medical records were accurate is relevant to the issue of negligence and not to whether Burden should have known that Darlene's death may have been caused by wrongdoing for the purposes of the statute of limitations, particularly considering Burden had not looked at the medical records prior to his deposition. Thus, we agree with the trial court, albeit for different reasons, that the applicable statute of limitations

started accruing on the date of Darlene's death, December 21, 2003. Burden failed to initiate his negligence claim against appellees until 2005, after the one-year period under R.C. 2305.113 had expired. Therefore, we find that Burden's negligence claim against appellees was barred by the applicable statute of limitations.

{¶ 24} Alternatively, Burden argues that appellees failed to set forth sufficient evidence that he should have discovered the negligence cause of action sooner than he did. However, as we noted above, the relevant inquiry was not when Burden should have discovered the negligence cause of action, but rather when he should have known to investigate the possibility of wrongdoing related to Darlene's death. Thus, appellees were not required to point to any evidence regarding Burden's discovery of a negligence cause of action.

{¶ 25} Moreover, the party moving for summary judgment is not required to produce any affirmative evidence, but must identify those portions of the record that it believes affirmatively support its argument. *Dresher*, 75 Ohio St.3d at 292, 662 N.E.2d 264. Appellees attached Burden's complaint, Lima Memorial included affidavits, and Burden's deposition was submitted to the trial court, all of which are acceptable types of evidence for summary judgment purposes. See id. at 292–293, 662 N.E.2d 264; Civ.R. 56(C). Thus, we find that appellees complied with the requirements in Civ.R. 56(C) when they filed their motions for partial summary judgment.

{¶ 26} Accordingly, we overrule Burden's assignment of error.

{¶ 27} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

PRESTON and WILLAMOWSKI JJ., concur.